460 A.2d 808

Raymond E. OSTRONIC and Carol Ostronic, Individually and as Administrators of the Estate of Walter Ostronic, Deceased, and Litman Litman Harris & Specter, P.A., Appellants,

v.

INSURANCE COMPANY OF NORTH AMERICA.

Superior Court of Pennsylvania.

Argued June 17, 1982.

Filed May 6, 1983.

Petition for Allowance of Appeal Denied Nov. 9, 1983.

Richard James Schubert, Pittsburgh, for appellants.

Stephen R. Mlinac, Pittsburgh, for appellee.

Before BROSKY, JOHNSON and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This appeal involves another dispute concerning the proper construction of provisions of the Pennsylvania No-fault Motor Vehicle Insurance Act. Act of July 19, 1974, P.L. 489, No. 176, Art. I, § 101 et seq., 40 P.S. § 1009.101 et seq. The Plaintiff-Appellants instituted their action as individual "survivors" of the deceased Walter Ostronic, and also as administrators of his estate, seeking to recover benefits

which were purportedly due from the Defendant-Appellee Insurance Company of North America. The lower court granted a defense motion for summary judgment, ruling that the No-fault Act permitted the Defendant insurer to set off or recover any benefits claimed in this action by the Appellants, leaving no genuine issue of material fact to be determined at trial.[1]

The pertinent facts underlying this dispute are not in dispute. Walter Ostronic died on September 5, 1979, as the result of injuries he suffered in an automobile accident. At the time of the accident, the decedent was the owner, operator, and sole occupant of the only vehicle involved in the collision. No insurance policy was in existence covering the victim and his car at the time of the accident. When a claim for benefits was filed, it was assigned to the Appellee under the assigned claim provisions of the No-fault Act.[2] The Appellants sought to recover so-called "basic loss benefits", which are defined in Section 103 (40 P.S. § 1009.103) as follows:

" 'Basic loss benefits' means benefits provided in accordance with this act for the net loss sustained by a victim, subject to any applicable limitations, exclusions, deductibles, waiting periods, disqualifications, or other terms and conditions provided or authorized in accordance with this act. Basic loss benefits do not include benefits for damage to property. Nor do basic loss benefits include benefits for net loss sustained by an operator or passenger of a motorcycle."

The Appellee refused to pay the basic loss benefits sought by the Appellants, and the instant action was there-

---

1. Pennsylvania Rule of Civil Procedure 1035, which governs summary judgments, provides that a court, upon application therefor by a party, may grant summary judgment on the pleadings, any depositions, answers to interrogatories, admissions on file and/or supporting affidavits, only if it is shown that: "... there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

2. See Section 108 of the No-fault Act, 40 P.S. § 1009.108.

after filed by them in the lower court, seeking to compel the payments.

The Appellee has maintained in the lower court, and again on this appeal, that the Appellants may not recover the claimed basic loss benefits because they are merely representing the decedent's estate, from which the Appellee is entitled, in turn, to recover any benefits paid. In this regard, the insurer relies upon Section 501 of the Act (40 P.S. § 1009.501) which in relevant part, states:

"The obligor obligated to pay basic loss benefits for accidental bodily injury to a person occupying a motor vehicle, the owner of which is uninsured pursuant to this act or to the spouse or relative resident in the household of the owner or registrant of such motor vehicle, shall be entitled to recover all the benefits paid and appropriate loss or adjustments costs incurred from the owner or registrant of such motor vehicle or from his estate." [3]

The lower court accepted this reasoning. It held that the decedent's estate should not obtain basic loss benefits which it was in due course obligated to return to the obligor insurer under Section 501. The lower court noted that the insurer enjoyed an absolute right to recover back from an uninsured motorist any sums paid to the "insured" party. The court reasoned that since the uninsured owner remains ultimately liable to reimburse the obligor where third parties are involved, his estate should not benefit where the uninsured decedent's death triggers the claim for the benefits in issue. The court determined that the legislature did not intend that the estate be paid benefits when it immediately became obligated to pay the benefits back to the assigned claim insurer.

The Appellants offer several contentions in support of this appeal. First they contend that the lower court failed to recognize the dichotomy in their claims, and to thereby distinguish between those offered by them as *administrators* of the decedent's *estate* on one hand, and those they

3. The Appellee insurer is clearly the "obligor", as that term is used in the Act. See Section 103 (40 P.S. § 109.103).

asserted as *"survivors"* on the other hand. Thus, they argue that the lower court erred when it dismissed their survivor claims based upon its conclusion that the estate's claims could be a setoff for the insurer, creating no basis for a trial in this case. Further, the Appellants maintain that the lower court's ruling as to the insurer's purported right of setoff against the estate is clearly erroneous in light of Section 106(e) of the Act (40 P.S. § 1009.106(e)), which states: "Except as otherwise provided in this act, basic loss benefits shall be paid without deduction or set-off." The Appellants offer other arguments which will be discussed later in this Opinion.

We find merit in the Appellants' arguments that the lower court erred in dismissing all of their claims, including those they say they asserted as *survivors*, rather than as representatives of the decedent's estate. Prior to our review and discussion of the specific aspects of the record which lead us to this conclusion, we deem it appropriate to discuss some important legal concepts which must guide us in our deliberations in this case.

First, we must be mindful that under the No-fault Act, it is clear that *survivors* of a deceased victim have rights *independent* of the victim's estate. Our Supreme Court addressed this issue and discussed it in detail in *Allstate Insurance Company v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980). It was recently again explained in Judge Van der Voort's lead Opinion in *Smiley v. Ohio Casualty Insurance Co.*, 309 Pa.Super. 247, 455 A.2d 142 (1983),[4] which cites *Heffner* and numerous other cases, as support for its explanation of the difference between the claims of the estate and those of the decedent's survivors:

"A work loss benefit is not a form of survivor's benefit, but is in the nature of reimbursement to the estate of the deceased for income he or she would probably have earned but for the accident. 40 P.S. § 1009.103."

4. In *Smiley,* Supra, Judge Beck filed a Concurring Opinion and Judge Hester filed a Concurring and Dissenting Opinion.

"Survivor's benefits, by way of distinction, are what a survivor might reasonably have expected to receive from the victim in money or services, had the victim not sustained the fatal injury. 40 P.S. § 1009.103."

"Each is a separate type of benefit, the work loss benefit intended to reimburse the estate of the victim for lost earnings, and survivor's benefits to reimburse surviving family members for what they would have received had the victim lived. Both may be claimed in a single action. A work loss claim is comparable to a wrongful death action." (Slip Opinion, p. 5)

Second, in our analysis of this appeal, we must not forget the rules which apply in our review of a lower court order which granted a summary judgment pursuant to Pa.R.C.P. 1035. These axioms were thoroughly discussed by our Court in *Schacter v. Albert*, 212 Pa.Super. 58, 61-2, 239 A.2d 841, 843 (1968), where we stated:

"On motion for summary judgment the Court must consider the entire setting of the case and all the papers that are included in the record... One who moves for summary judgment has the burden of demonstrating clearly that there is no genuine issue as to any material fact... The Court must consider both the record actually presented and the record potentially possible at the time of trial... A hearing on a motion for summary judgment is not a trial on the merits, and the Court on such motion should not attempt to resolve conflicting contentions of fact... The court is to accept as true all well pleaded facts in the plaintiff's pleadings, as well as the admissions on file, giving to the plaintiff the benefit of all reasonable inferences to be drawn therefrom... The record must be examined in the light most favorable to the non-moving party.... In passing upon a motion for summary judgment it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment.... A

party should not be deprived of an adequate opportunity to fully develop (sic) his case by witnesses and a trial, when the issues involved make such procedure the appropriate one.... It is often the case that although the basic facts are not in dispute, the parties in good faith may nevertheless disagree about the inferences to be drawn from these facts, what the intention of the parties was as shown by the facts... Under such circumstances the case is not one to be decided by the Trial Judge on a motion for summary judgment." (citations omitted)

Thus, it is evident that summary judgment should be granted only in the clearest of cases.

 With these concepts in mind, we shall review the record to determine the validity of the Appellants' arguments that they asserted individual "survivor" claims in addition to claims on behalf of the estate. The caption of the Complaint identifies the Appellants as individuals as well as administrators of Walter Ostronic's estate. In the body of the Complaint, we find the following allegations, which *arguably* set forth individual "survivor" claims on the part of Plaintiff Carol Ostronic, in addition to those set forth on behalf of the estate:

"10. As a result of the accident, the Estate of Plaintiffs' Decedent has suffered a severe loss, and *survivor Plaintiff Carol Ostronic in particular, as she was dependent upon the Decedent for support,* such loss as defined in *'survivor's loss'* under the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. 1009.13." (emphasis added)

We must also consider the responsive pleadings. The Defendant's Answer provided:

"2. In regard to the averments contained in Paragraphs 6 through 10 of the Plaintiffs' Complaint, this Defendant, after reasonable investigation, is without sufficient information to ascertain the truth or falsity of all averments contained therein and, consequently, all such

averments are denied and strict proof thereof is demanded at the time of trial."

*　　*　　*　　*　　*　　*

"4. In regard to the averments contained in Paragraph 13 of the Plaintiffs' Complaint, it is admitted that Defendant has not tendered any benefits to the estate of Plaintiffs' decedent. However, it is denied that any such benefits are due and owing to Plaintiffs and it is further denied that this conduct on the part of the Defendant is in violation of the aforesaid No-Fault Act; to the contrary, *Plaintiffs have never demonstrated the dependency of Plaintiff Carol Ostronic upon the decedent for support.* Furthermore, it is the information and belief of this Defendant that Plaintiffs' decedent was uninsured at all times material hereto and, consequently, in contravention of § 1009.104 of the aforesaid No-Fault Act." (emphasis added)

These responses indicate a knowledge on the part of the Defendant that it would be responding to individual claims of the Plaintiff Carol Ostronic in that she allegedly relied upon the decedent for support. Further we note that the Defendant also pleaded New Matter, which included the following assertions:

"8. Pursuant to the aforesaid No-Fault Act, specifically § 1009.108(a)(3) thereof, all benefits and advantages that accrued to *Plaintiffs or Plaintiffs' decedent* as a result of the decedent's death shall be subtracted from their loss in calculating the net loss payable pursuant to the Assigned Claims Plan. Consequently, *all or part* of Plaintiffs' claims are barred by the terms of the above cited section of the aforesaid No-Fault Act. (emphasis added)

"9. Relative to the "Survivor's Loss" benefit being claimed by Plaintiffs, no reasonable proof of *the dependency of Plaintiff Carol Ostronic upon decedent for support* has ever been submitted." (emphasis added)

These additional declarations lend weight to the proposition that individual "survivor" claims by Carol Ostronic based upon grounds of dependency were in issue in the case.

The record before the lower court also includes a transcript of testimony resulting from a deposition of Ms. Ostronic, taken on April 13, 1981.[5] In the course of that deposition, she testified that she had been financially dependent upon the decedent, her son, prior to his death. She related that he contributed each month to the family's rent, food and utility bills.

Since the time of the 1981 hearing in the lower court in the instant case, this Court has held that dependency is not a requirement for the recovery of survivor's benefits if the claimant was a parent of the deceased. See *Chesler v. Government Employees Insurance Company,* 302 Pa.Super. 356, 448 A.2d 1080 (1982). Thus, it should be clear that while we find Carol Ostronic's testimony as to her alleged financial dependency on her deceased son to be significant in supporting the conclusion that she raised individual survivor claims in this case, the holding in *Chesler, supra,* would appear to make the question of actual dependency inconsequential in resolving the issue of her actual entitlement to survivor's benefits.

While it is clear that the Appellants' Complaint could have been more carefully drafted to clearly enunciate a separate "survivor" claim on behalf of Ms. Ostronic, we are compelled to the conclusion that the record as. a whole raises inferences of the existence of such a claim sufficient to preclude the granting of a defense motion for summary judgment. The lower court's opinion in support of its grant of summary judgment does not address this issue, but instead discusses the Plaintiffs' case as if it *only* included claims by the estate. Because we find that separate claims by Plaintiff Carol Ostronic were arguably raised in the case, it is necessary that we vacate the summary judgment and

5. Mrs. Ostronic had been divorced from the Plaintiff Raymond E. Ostronic for several years, and had remarried by the time of the deposition. Her new married name was Carol Lee Gongaware.

remand for further proceedings in the lower court, at least as to those claims.

We must next examine the claim that the estate is entitled to receive basic loss benefits. In our review of this problem, we are aware that the Act contains two different provisions which appear to suggest directly contrary answers to the question of whether the assigned risk obligor can withhold basic loss benefit payments theoretically due to be paid to the estate of the uninsured owner whose conduct caused the covered losses.[6] The Appellants, of course, point out that the Appellee seeks a "setoff" and direct our attention to Section 106(e), which, as discussed earlier, provides that: "Except as otherwise provided in this act, basic loss benefits shall be paid without deduction or setoff." The Appellee in turn points out Section 501, also highlighted earlier in this Opinion, which provides that the obligor shall be entitled to recover " . . . . all the benefits paid and appropriate loss or adjustment costs incurred from the [uninsured] owner or registrant of such motor vehicle or from his estate."

■ It is clear that while the assigned risk insurer is obligated to pay basic loss benefits to a living uninsured owner-occupant of a vehicle, the insurer can thereafter file an action pursuant to Section 501 to recover from the same individual the specific benefits paid to him. See *Harleysville Mutual Insurance Company v. Schuck*, 302 Pa.Super. 534, 449 A.2d 45 (1982). However, when we examine both Section 501 and Section 106(e), it appears to us that when the legislature drafted these two sections it did not intend that the assigned risk obligor would have to pay a

---

**6.** Our analysis is undertaken with awareness of the sage observation of President Judge Cercone in *Heffner v. Allstate Insurance Company*, 265 Pa.Super. 181, 184, 401 A.2d 1160, 1161 (1979), affirmed, 491 Pa. 447, 421 A.2d 629 (1980), where he stated: "At the outset we caution anyone who embarks on the high seas of Pennsylvania's No-fault Motor Vehicle Insurance Act not to do so without a good compass, a knowledge of reefs and storms and plenty of food and water. Any attempt to choose an alternative route by land in an effort to unlock the secrets of the Act will encounter mazes of paths, pitfalls, underbrush and dead ends."

benefit to the *estate* of an uninsured deceased owner-driver, from which estate the obligor would then immediately have a claim for recoupment of all such benefits paid. Section 106(e) simply was not designed to have application in these particular circumstances. Any other construction would create other problems which the legislature could not have desired. One obvious problem would be the practical ability of the insurer to obtain full reimbursement from the estate of an uninsured driver when there are other claims against that estate by other creditors and the size of the estate, including any No-fault benefits received, is exceeded in amount by the various claims. Further, the insurer's chances of recovery would possibly be adversely affected by the preference accorded such a claim under the Probate, Estates and Fiduciaries Code (Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 P.S. § 3392). In addition to these potential problems, we believe that if the Appellants' position was held to be proper and it was established that an estate could recover basic loss benefits in these circumstances, it would actually work to discourage drivers from purchasing automobile insurance coverage. This would result because it would be recognized that the benefits of insurance protection might be available to supplement one's estate, without a countervailing obligation to pay insurance premiums. Only the responsible drivers who purchased insurance would suffer in such circumstances, as their insurance rates would no doubt increase as the insurers' costs increased. It is evident that the Appellants urge a position which would enable the estates of irresponsible vehicle owners to profit through wrongdoing by the decedent. This result could never have been intended by our legislators in the passage of the No-fault Act.[7]

The situation of a deceased uninsured owner is obviously different from that of a living one with regard to the question of whether an initial payment of benefits should be

7. A presumption exists in our law that the legislature did not intend a result that is either absurd, unreasonable and/or inequitable. See *Seburn v. Luzerne & Carbon County Motor Transit Company,* 394 Pa. 577, 148 A.2d 534 (1959).

made by the assigned risk insurer. In *Harleysville Mutual Insurance Co. v. Schuck, supra,* the reasons for requiring payment to a living victim are clearly explained:

"The rationale for requiring an insurer to pay an occupant's claim for basic loss benefits before ultimate liability has been determined seems clear. Compensating an injured victim of a vehicular accident is a paramount purpose of the legislatively adopted no-fault scheme. Thus, an injured victim, even if he or she is an uninsured owner, can receive 'prompt and comprehensive professional treatment' and thus be rehabilitated and returned as a productive member of society as quickly as possible. See Section 102(a)(9) of the No-fault Act, 40 P.S. § 1009.-102(a)(9). Only after this purpose has been accomplished does the statute permit a determination of ultimate liability." 302 Pa.Super. at 538–39, 449 A.2d at 447.

In the situation of a deceased victim, the justification of speeding treatment and rehabilitation simply does not apply. We can perceive no other legislative intent in the Act to support a rule requiring payment to an uninsured deceased owner's estate in such a case, with undeserved enrichment for the estate and unrecoverable losses by the assigned risk insurer being the probable results in such circumstances. Therefore, we conclude that the lower court was correct in finding that the Appellee had no obligation to provide the No-fault benefits claimed by the estate in this action, and we hold that the granting of summary judgment as to such claims was correct.

The judgment of the lower court is vacated in part, solely as to the possible individual survivor claims asserted by the Appellant Carol Ostronic, and such matters are remanded to the lower court for further proceedings.[8] As to the claims

8. The Plaintiffs' attorneys also are party Appellants in this action. Their interest in the case is their application for the Defendant's payment of legal fees, pursuant to Section 204(a)(2) [ (40 P.S. § 1009.204(a)(2) ]. No issue is raised on this appeal regarding that claim and it is appropriate that the lower court deal with the questions involved in the course of handling the other aspect of this case which is being remanded for further proceedings.

of the estate, the judgment of the lower court is hereby affirmed. Jurisdiction is not retained.