513 A.2d 1046

Helen E. BILLMAN, Administratrix of the Estate of Brian Billman, Deceased, for and In Behalf Of Estate and for and In Behalf Of Helen E. Billman, Next of Kin and Heir-At-Law of Said Brian Billman, Appellant,

v.

PENNSYLVANIA ASSIGNED CLAIMS PLAN and the Travelers Insurance Company, Appellees.

Superior Court of Pennsylvania.

Argued April 7, 1986.

Filed Aug. 12, 1986.

William P. Coffin, Easton, for appellant.

Jeffrey P. Hoyle, Lansdale, for appellees.

Before CIRILLO, President Judge, and BROSKY, ROWLEY, WIEAND, MONTEMURO, BECK, TAMILIA, POPOVICH and JOHNSON, JJ.

MONTEMURO, Judge:

This appeal is from the February 12, 1985 order of the Court of Common Pleas of Northampton County granting appellees' motion for summary judgment. Appellant contends that the court below erred in finding that (1) she was not entitled to work loss benefits as administratrix of decedent's, Brian Billman's, estate under the Pennsylvania No-fault Motor Vehicle Insurance Act (No-fault Act)[1]; (2) she was not entitled to work loss benefits as an alleged "survivor" of decedent under the No-fault Act; and (3) she was not entitled to receive interest on the overdue work loss benefits.

On August 4, 1981, appellant's son died as a result of an automobile accident. His vehicle was uninsured at the time. Following her appointment as administratrix of her son's estate, appellant applied to appellee, the Pennsylvania Assigned Claims Plan (PACP), for no-fault benefits on behalf of the estate and on behalf of herself, as decedent's survivor.[2] When appellee, the Travelers Insurance Co. (The Travelers), to whom the claim was assigned, failed to pay the claimed benefits, appellant brought the instant suit. The Travelers has since paid appellant five thousand dollars ($5,000) in survivor's loss benefits and fifteen hundred dollars ($1,500) in funeral expense benefits as partial settlement of appellant's claim.[3] On November 8, 1984, appellees

1. Act of July 19, 1974, P.L. 489, No. 176, arts. I–VII, §§ 101–701, 40 P.S. §§ 1009.101–701, *repealed*, Act of February 12, 1984, P.L. 26, No. 11, § 8(a), *effective* October 1, 1984.

2. Section 108 of the No-fault Act provides for recovery by motor vehicle accident victims where no basic loss insurance policy applies to the claim. 40 P.S. § 1009.108(a). Uninsured victims submit their claims to the assigned claims plan. Each claim is then assigned to one of the participating insurers. *Id.* § 1009.108(b).

3. Appellant would have us consider whether she is entitled to receive eighteen percent (18%) interest on the sixty-five hundred dollars ($6,500) that The Travelers has already paid to her as partial settlement. However, in her motion for summary judgment, appellant alleged that the sole issue remaining before the court below was her entitlement to work loss benefits and interest thereon. *See* Appellant's motion for summary judgment, at ¶¶ 10, 14. We, therefore, find

filed a motion for summary judgment on the remaining issue of appellant's entitlement to work loss benefits as either a survivor or as administratrix of her son's estate.[4] Appellant filed a cross-motion for summary judgment on January 3, 1985. On February 12, 1985, the court below entered an opinion and order granting appellees' motion for summary judgment and denying appellant's cross-motion. This appeal followed.

We begin with the observation that in construing the No-fault Act, as in construing any statute, we are guided by the dictates of the Statutory Construction Act,[5] with the principal rule being, "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). The General Assembly's findings and avowed purpose in enacting the No-fault Act are expressed at 40 P.S. § 1009.102 as follows:

(a) **Findings.**—The General Assembly hereby finds and declares that:

.   .   .   .   .

(9) a Statewide low-cost, comprehensive, and fair system of compensating and restoring motor vehicle accident victims can save and restore the lives of countless victims by providing and paying the cost of services so that every victim has the opportunity to:

(A) receive prompt and comprehensive professional treatment; and

(B) be rehabilitated to the point where he can return as a useful member of society and a self-respecting and self-supporting citizen.

.   .   .   .   .

appellant's contention that she is entitled to interest upon the sums already paid waived as it was not raised below. *See* Pa.R.A.P. 302(a).

**4.** Basic loss benefits include benefits for work loss. *See* 40 P.S. § 1009.103.

**5.** Act of December 6, 1972, P.L. 1339, No. 290, 1 Pa.C.S. § 1501 *et seq.*

**(b) Purposes.**—Therefore, it is hereby declared to be the policy of the General Assembly to establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims.

Of appellant's claims on appeal, we first address her contention that, in her capacity as administratrix of her son's estate, she is entitled to work loss benefits.

Had Brian Billman's vehicle been covered, at the time of the accident, by the security required by Section 104 of the No-fault Act, this issue would not detain us. On July 9, 1982, in *Freeze v. Donegal Mutual Insurance Company,* 301 Pa.Super. 344, 447 A.2d 999 (1982) *(en banc), aff'd,* 504 Pa. 218, 470 A.2d 958 (1983), a case involving a claim on behalf of an *insured* decedent's estate, this court held "that the estate of a deceased victim is entitled to recover work loss benefits under the No-fault Act." *Id.* 301 Pa.Super. at 354, 447 A.2d at 1004.[6]

Nearly ten months later, in *Ostronic v. Insurance Company of North America,* 314 Pa.Super. 146, 460 A.2d 808 (1983), this court considered the impact of a decedent's *uninsured* status upon his estate's claim for basic loss benefits. In *Ostronic,* as in the case *sub judice,* the appellants' claim was presented to the PACP and thereafter assigned to the appellee/insurer, which in turn refused to pay the basic loss benefits sought. With regard to appellants' claim on behalf of the estate in *Ostronic,* we affirmed the grant of the appellee/insurer's motion for summary judgment. In that the issue presently before us was before this court in *Ostronic,* and because our colleague, the Honorable Harry M. Montgomery, lent his considerable

---

**6.** In *Tubner v. State Farm Mutual Automobile Insurance Company,* 307 Pa.Super. 207, 210, 452 A.2d 1388, 1389 (1982), we noted that the result reached in *Freeze v. Donegal Mutual Insurance Company,* 301 Pa.Super. 344, 447 A.2d 999 (1982) *(en banc ), aff'd,* 504 Pa. 218, 470 A.2d 958 (1983), was "already apparent" from our supreme court's disposition of *Allstate Insurance Company v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980).

analytical talents to a thoughtful opinion therein, we set forth the following from *Ostronic:*

We must next examine the claim that the estate is entitled to receive basic loss benefits. In our review of this problem, we are aware that the Act contains two different provisions which appear to suggest directly contrary answers to the question of whether the assigned risk obligor can withhold basic loss benefit payments theoretically due to be paid to the estate of the uninsured owner whose conduct caused the covered losses. The Appellants, of course, point out that the Appellee seeks a 'setoff' and direct our attention to Section 106(e), which, as discussed earlier, provides that: 'Except as otherwise provided in this act, basic loss benefits shall be paid without deduction or setoff.' The Appellee in turn points out Section 501, also highlighted earlier in this Opinion, which provides that the obligor shall be entitled to recover ' ... all the benefits paid and appropriate loss or adjustment costs incurred from the [uninsured] owner or registrant of such motor vehicle or from his estate.'

It is clear that while the assigned risk insurer is obligated to pay basic loss benefits to a living uninsured owner-occupant of a vehicle, the insurer can thereafter file an action pursuant to Section 501 to recover from the same individual the specific benefits paid to him. *See Harleysville Mutual Insurance Company v. Schuck,* 302 Pa.Super. 534, 449 A.2d 45 (1982). However, when we examine both Section 501 and Section 106(e), it appears to us that when the legislature drafted these two sections it did not intend that the assigned risk obligor would have to pay a benefit to the *estate* of an uninsured deceased owner-driver, from which estate the obligor would then immediately have a claim for recoupment of all such benefits paid. Section 106(e) simply was not designed to have application in these particular circumstances. Any other construction would create other problems which the legislature could not have desired. One obvious problem would be the practical ability of the

insurer to obtain full reimbursement from the estate of an uninsured driver when there are other claims against that estate by other creditors and the size of the estate, including any No-fault benefits received, is exceeded in amount by the various claims. Further, the insurer's chances of recovery would possibly be adversely affected by the preference accorded such a claim under the Probate, Estates and Fiduciaries Code (Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 P.S. § 3392). In addition to these potential problems, we believe that if the Appellants' position was held to be proper and it was established that an estate could recover basic loss benefits in these circumstances, it would actually work to discourage drivers from purchasing automobile insurance coverage. This would result because it would be recognized that the benefits of insurance protection might be available to supplement one's estate, without a countervailing obligation to pay insurance premiums. Only the responsible drivers who purchased insurance would suffer in such circumstances, as their insurance rates would no doubt increase as the insurers' costs increased. It is evident that the Appellants urge a position which would enable the estates of irresponsible vehicle owners to profit through wrongdoing by the decedent. This result could never have been intended by our legislators in the passage of the No-fault Act.

The situation of a deceased uninsured owner is obviously different from that of a living one with regard to the question of whether an initial payment of benefits should be made by the assigned risk insurer. In *Harleysville Mutual Insurance Co. v. Schuck, supra,* the reasons for requiring payment to a living victim are clearly explained:

> "The rationale for requiring an insurer to pay an occupant's claim for basic loss benefits before ultimate liability has been determined seems clear. Compensating an injured victim of a vehicular accident is a paramount purpose of the legislatively adopted no-fault scheme. Thus, an injured victim, even if he or she is an

uninsured owner, can receive 'prompt and comprehensive professional treatment' and thus be rehabilitated and returned as a productive member of society as quickly as possible. See Section 102(a)(9) of the No-fault Act, 40 P.S. § 1009.102(a)(9). Only after this purpose has been accomplished does the statute permit a determination of ultimate liability." 302 Pa.Super. at 538–39, 449 A.2d at 47.

In the situation of a deceased victim, the justification of speeding treatment and rehabilitation simply does not apply. We can perceive no other legislative intent in the Act to support a rule requiring payment to an uninsured deceased owner's estate in such a case, with undeserved enrichment for the estate and unrecoverable losses by the assigned risk insurer being the probable results in such circumstances. Therefore, we conclude that the lower court was correct in finding that the Appellee had no obligation to provide the No-fault benefits claimed by the estate in this action, and we hold that the granting of summary judgment as to such claims was correct.

*Id.* 314 Pa.Super. at 155–57, 460 A.2d at 812–14 (footnotes omitted).

■ We are of the opinion that Judge Montgomery's reasoning in *Ostronic* is unassailable. Mindful as we are of the pertinent standards for reviewing the entry of summary judgment, *see Chicarella v. Passant*, 343 Pa.Super. 330, 494 A.2d 1109 (1985), Pa.R.C.P. 1035(b), we conclude that the court below properly found appellant's claim to work loss benefits on behalf of the decedent's estate to be untenable.

We next confront appellant's claim to work loss benefits on behalf of herself as an alleged "survivor."

Section 103 of the No-fault Act defines "survivor" as: "(A) spouse; or (B) child, parent, brother, sister or relative dependent upon the deceased for support."[7] In *Allstate*

7. We, of course, make no representation herein with regard to whether the dictates of our supreme court's decision in *Chesler v. Government Employees Insurance Company*, 503 Pa. 292, 469 A.2d 560 (1983) (parent as statutory "survivor" must establish dependency in order to

*Insurance Company v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980), our supreme court held that survivors of deceased victims are entitled to payment of work loss benefits pursuant to the pertinent No-fault Act provisions. *See Freeze v. Donegal Mutual Insurance Company,* 504 Pa. 218, 222, 470 A.2d 958, 960 (1983). More specifically however, as stated in *Fairbanks v. Travelers Insurance Company,* 337 Pa.Super. 39, 43, 486 A.2d 469, 471 (1984), "In *Heffner,* our supreme court held that the surviving spouse of an *insured* killed in a motor vehicle accident could recover the *insured's* work-loss benefits as if the *insured* had survived with a permanent disability and recovered them himself." (emphasis supplied) (citation omitted). The issue of whether a survivor of a deceased *uninsured* is entitled to work loss benefits appears to be one of first impression.

We note that the assigned claims provisions of the No-fault Act, found at section 108, include the following:

**(a) General.—**

(1) If this act is in effect on the date when the accident resulting in injury occurs, a victim *or the survivor or survivors of a deceased victim may obtain basic benefits through the assigned claims plan* established pursuant to subsection (b) of this section, if basic loss insurance:

. . . . .

(C) applicable to the injury cannot be identified;

. . . . .

(emphasis supplied). In that "basic loss benefits" consist of "allowable expense", "replacement services loss", "survivor's loss", *and* "work loss", 40 P.S. § 1009.103, we are of the opinion that to parcel work loss out of the panoply of survivors' entitlements permitted by subsection 108(a) would be to render the language of that subsection illusory. "When the words of the statute are clear and free from all ambiguity, the letter of it is not to be disregarded ..." 1

recover "survivor's loss benefits") impact upon the entitlement of a parent/"survivor" to "work loss benefits." That issue is not properly before us.

Pa.C.S. § 1921(b). This interpretation also comports with the avowed purpose of the No-fault Act, which was to provide a "system of prompt and adequate basic loss benefits for motor vehicle accident victims *and the survivors of deceased victims.*" 40 P.S. § 1009.102(b).

Although this court in *Ostronic, supra,* and again today, has found the estates of uninsured decedents to be unentitled to work loss benefits, the rationale supporting that determination leaves unaltered the propriety of similar claims on behalf of survivors. Our refusal to allow estate claims turns in large part upon our recognition that a decedent, who has failed to comply with the No-fault Act's requirement that adequate security be obtained, must bear the ultimate risk of loss. Unlike an estate, however, a survivor does not "stand[ ] in the shoes of the deceased victim," *Freeze, supra,* 504 Pa. at 224, 470 A.2d at 961, and therefore the decedent's culpability should not operate to deny an inculpable survivor his or her entitlements. That is, it is not the survivor who failed to purchase the mandatory insurance coverage.[8]

■ We accordingly hold that, as an alleged "survivor" of the decedent, Brian Billman, appellant is entitled to recover

8. In their brief, appellees direct our attention to Judge Van der Voort's plurality opinion in *Smiley v. Ohio Casualty Insurance Company,* 309 Pa.Super. 247, 455 A.2d 142 (1983), wherein work loss benefits were characterized as "in the nature of reimbursement to the *estate* of the deceased ..." *Id.* 309 Pa.Super. at 252, 455 A.2d at 145 (emphasis added). While this characterization is an often useful analytical construct, given the substantive context instantly before us, to abide by this construct would require that we act in utter contravention of our supreme court's pronouncements in *Allstate Insurance Company v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980), and its progeny. Appellees implicitly urge that we not recognize work loss benefits as a form of survivors' benefits; however, as reiterated in *Freeze v. Donegal Mutual Insurance Company,* 504 Pa. 218, 470 A.2d 958 (1983), "In *Heffner,* it was decided that the right to work loss benefits is not terminated by the demise of a victim. We [our supreme court] held that 'survivors' of deceased victims are entitled to payment of these benefits ..." *Id.* 504 Pa. at 222, 470 A.2d at 960.

   Furthermore, the position espoused by appellees ignores the unambiguous language of section 108 of the No-fault Act and, in doing so, denies "survivors" their legitimate entitlements.

work loss benefits under the PACP,[9] and therefore the court below erred as a matter of law in granting appellees' motion for summary judgment with regard to this issue.

Appellant's final contention is that she is entitled to receive interest on any work loss benefits due from appellee, The Travelers. We agree. The No-fault Act provides:

> No-fault benefits are overdue if not paid within thirty days after the receipt by the obligor of each submission of reasonable proof of the fact and amount of loss sustained, unless the obligor designates, upon receipt of an initial claim for no-fault benefits, periods not to exceed thirty-one days each for accumulating all such claims received within each such period, in which case such benefits are overdue if not paid within fifteen days after the close of each such period.... Overdue payments bear interest at the rate of eighteen percent (18%) per annum.

40 P.S. § 1009.106(a)(2). In *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 155, 425 A.2d 419, 421 (1981), our supreme court held "that where a payment is overdue as defined by § 106, 18% interest is owed on that payment regardless of the 'good faith' of the insurer or the 'reasonable cause' of the delay." *See also, Steppling v. Pennsylvania Manufacturers' Association Insurance Co.*, 328 Pa. Super. 419, 432, 477 A.2d 515, 521 (1984).

On remand, interest will be due pursuant to subsection 106(a)(2) on the work loss benefits wrongly withheld.

In light of the foregoing, we affirm in part the judgment entered below, reverse in part, and remand this case for proceedings consistent with this opinion. Jurisdiction is not retained.

---

9. We note that our disposition of the instant appeal may appear to create a somewhat anomalous situation in that we are upholding appellant's entitlement as a survivor to precisely the same benefits we have determined she is not entitled to as the administratrix of her son's estate. However, appellant herein stands before us in two, very separate and discrete, capacities as both a statutory "survivor" and as representative of the distinct entity, her son's estate. Anomalous as this situation may appear, the distinction itself is quite real and must be assiduously protected.