513 A.2d 1051

**Joseph BROWN, Appellant,**

v.

**TRAVELERS INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 24, 1986.

Filed Aug. 15, 1986.

Joseph Grossman, Philadelphia, for appellant.

David M. McCormick, Philadelphia, for appellee.

Before CIRILLO, President Judge, and CAVANAUGH,* BROSKY, WIEAND, OLSZEWSKI, DEL SOLE, MONTEMURO, BECK and TAMILIA, JJ.

OLSZEWSKI, Judge:

This matter comes before this *en banc* panel on appeal from an order of the lower court granting appellee's motion for judgment on the pleadings. The relevant events giving rise to this plea occurred on June 10, 1983, when appellant, Joseph Brown, the owner-operator of an uninsured motor vehicle was involved in an accident with another uninsured motorist. Appellant alleges that he was totally without fault in causing the accident. Since neither motor vehicle was insured at the time of the accident, appellant submitted his claim for basic loss and uninsured motorist benefits under the assigned claims plan of the Pennsylvania No-fault Motor Vehicle Insurance Act (hereinafter the Act or the No-fault Act).[1] Appellee, Travelers Insurance Company, was designated the assigned claims insurer, but refused to honor the claim for uninsured motorist benefits.[2] Consequently, appellant commenced an action against appellee, but on a motion by the latter party, the lower court dismissed the complaint. The court reasoned that since appellant failed to maintain the coverage mandated by section 104(a) of the Act,[3] he was not an "innocent victim" entitled

---

* CAVANAUGH, J., did not participate in the decision in this case.

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. Secs. 1009.101–701, repealed Act of February 12, 1984, P.L. 26, No. 11, Sec. 8(a), effective October 1, 1984. (Hereinafter, the prefix "1009" will be eliminated when citing to section numbers in the textual material, e.g., section 101, not section 1009.101).

2. Appellee, however, did pay the claims submitted by appellant for basic loss benefits.

3. Section 104(a) in pertinent part provides:

Every owner of a motor vehicle which is registered or which is operated in this Commonwealth by the owner or with his permission, shall continuously provide security covering such motor vehicle while such vehicle is either present or registered in the

to recover uninsured motorist benefits under *Tubner v. State Farm Mutual Automobile Insurance Co.*, 496 Pa. 215, 436 A.2d 621 (1981). Moreover, the court refused to award these benefits to appellant inasmuch as he ultimately was liable under section 501 of the Act for all payments made on his behalf. Appellant now challenges this decision and contends that he is entitled to receive uninsured motorist benefits for the following reasons: (1) the Pennsylvania Supreme Court, in *Tubner* and *Modesta v. Southeastern Pennsylvania Transportation Authority*, 503 Pa. 437, 469 A.2d 1019 (1983), guarantees all innocent victims the right to receive uninsured motorist benefits under the assigned claims plan; (2) neither the Uninsured Motorist Act, 40 P.S. Sec. 2000, nor section 601 of the No-fault Act expressly prohibits an uninsured owner-operator from acquiring uninsured motorist benefits; and (3) an uninsured owner-operator should not be denied these benefits merely because the insurer has a right to reimbursement under section 501 of the Act. We will address these arguments seriatim.

Undoubtedly, this Court is no stranger to that piece of legislation which was enacted to cure the inadequacies of a prior system of insurance which distributed justice and compensated injuries based upon a fault finding process. While in retrospect, it now may be easy for us to condemn the system which was intended to be the panacea for the problems of the pre-No-fault era, nevertheless, it should not be forgotten that the Act embodied many noble goals. With its advent, the Act not only afforded accident victims the certainty of knowing that their losses would be covered by their own insurance, but it also suppressed the disparities of an arbitrary recovery system. In addition, the Act eliminated the need for jury trials in establishing liability, thereby avoiding the excessive costs of litigation and the lengthy delays in compensating and restoring accident victims. *See* Comment, *Whose Fault is No-fault? The Penn-*

Commonwealth. Security shall be provided for the payment of basic loss benefits ...

*sylvania No-fault Motor Vehicle Insurance Act,* 41 U.Pitt. L.Rev. 27 (1979). *See also* Shrager & Applebaum, *The Pennsylvania No-fault Motor Vehicle Insurance Act: Constitutional Analysis,* 48 Temp.L.Q. 475 (1975).

Notwithstanding these carefully articulated intentions, the Act was riddled with many problems.[4] Yet, despite these inadequacies, we are certain that the legislators never intended an uninsured owner-operator to recover uninsured motorist benefits under the assigned claims plan. Moreover, when this Court was before confronted with the same issue, it decided that an uninsured owner-operator of a motor vehicle may not recover uninsured motorist benefits from an assigned claims plan insurer. *Johnson v. Travelers,* 343 Pa.Super. 560, 495 A.2d 938 (1985); *Aagesen v. The Travelers Companies,* 346 Pa.Super. 45, 498 A.2d 1363 (1985).

Now, in defense of his position, appellant argues that the Pennsylvania Supreme Court in *Tubner* not only established the rights of all uninsured victims of motor vehicle accidents to receive uninsured motorist benefits under the assigned claims plan, but it also reaffirmed this position in *Modesta* and limited it to exclude from coverage only those uninsured owner-operators who cause accidents. We disagree with these interpretations.

In *Tubner,* the Court was presented with the problem of deciding whether the administratrix of the victim's estate would be allowed to recover both basic loss and uninsured

---

4. For instance, several years ago, one of our brethren made the following comments about the newly enacted Pennsylvania No-fault Motor Vehicle Insurance Act:
   Unfortunately for ... the plaintiff ... his case is an example of the causes of 'growing complaints' and 'widespread dissatisfaction' with the administration of the Act.... The plaintiff finds himself between the proverbial rock and a hard place. He is caught in the middle of a dispute between two insurance companies litigating the question of which one is obliged to pay the plaintiff those benefits which he is entitled to receive under the Act....
   *Blocker v. Motorists Mut. Ins. Co.,* 37 Beaver Co. L.J. 87, 87 (C.P.1978) (Judge Rowley).

motorist benefits under the assigned claims plan. It is significant to our analysis that the victim who was injured in an uninsured automobile was himself an uninsured passenger.[5] Although it did not become an explicit part of the *Tubner* Court's decision, it is noteworthy that the victim was uninsured, not for the reason that he willfully or negligently failed to maintain his own automobile insurance, but simply because he did not own an automobile, and therefore was not obliged to maintain the compulsory no-fault coverage. *See also Drusak v. Insurance Company of North America,* 340 Pa.Super. 205, 489 A.2d 914 (1985) (pedestrian who was struck by a motorcycle was entitled to recover uninsured motorist benefits, as well as "basic loss" benefits, under the assigned claims plan); *Prudential Property & Casualty Insurance Company v. Falligan,* 335 Pa.Super. 195, 484 A.2d 88 (1984) (uninsured pedestrians who were injured after being struck by uninsured motorists were entitled to recover uninsured motorist benefits). Appellant, in the instant case, however, cannot proffer the same excuse, since he violated the express mandates of the Act by failing, whether through intent or neglect, to maintain the compulsory insurance.

Likewise, appellant's argument that *Modesta* only forbids coverage to that limited class of uninsured motorists who cause accidents is without merit. The Court in *Modesta* was confronted with the issue of whether the transportation authority, a self-insurer, was required to provide uninsured motorist coverage to its uninsured passengers. In dicta, the Court noted that prior to its decision there were two groups of individuals who received no uninsured motorist protection: uninsured motorists who cause accidents, and uninsured occupants of self-insured vehicles. In denying

---

**5.** It is noteworthy that under the No-fault Act, a victim's legal right to recover in tort and hence the amount of his recovery is dependent upon the status of the parties (and in part on the nature of the vehicle) rather than on the nature of the conduct of the parties. Shrager & Applebaum, *The Pennsylvania No-fault Motor Vehicle Insurance Act: Constitutional Analysis,* 48 Temp.L.Q. 475, 485 (1975).

recovery to the former group, but affording it to the latter, the Court stated:

> It is reasonable to deny uninsured motorist coverage to the first group, since they have not only chosen not to comply with the mandatory insurance law, but have also caused the accidents which resulted in their injuries, however, it makes no sense in terms of any policy of deterrence, retribution or liberal construction of a remedial statute to deny uninsured motorist coverage to uninsured individuals who have not caused the accidents which resulted in their injuries, simply because they were occupants of self-insured vehicles.

*Modesta v. Southeastern Transportation Authority,* 503 Pa. 437, 443, 469 A.2d 1019, 1023 (1983).

On the basis of these comments, it is illogical for us now to conclude that the Court meant to deny coverage only to that group of motorists who cause accidents and award benefits to everyone else. As part of its analysis, the Court noted that not only are these motorists at fault in causing the accident, but they also have failed to maintain the compulsory insurance. It would be inconsistent for us to afford appellant recovery merely because he did not cause the accident when the no-fault system has eliminated the need to determine fault in awarding benefits. While appellant's innocence in causing the accident is commendable, it is more significant that appellant failed to maintain that insurance which was designed to award him benefits in the event that he would be involved in an accident with another uninsured motorist. This observation, we believe, is reinforced by the legislature's inclusion in the Act of section 601, which sanctions those who fail to comply with the mandatory provisions of section 104, and section 301,[6] which places ultimate liability upon the uninsured owner.

Moreover, there is a recognizable difference between the type of injuries compensated for under the No-fault Act and

6. Section 301(a)(1) of the Act, in pertinent part, provides:
   An owner of a motor vehicle involved in an accident remains liable if, at the time of the accident, the vehicle was not a secured vehicle.

the Uninsured Motorist Act.[7]   Our Supreme Court in *Tucci v. State Farm Insurance Co.*, 503 Pa. 447, 469 A.2d 1025 (1983), defined basic loss or no-fault benefits to include payment for economic loss or "special damages," i.e., medical expenses and loss of earnings, whereas uninsured motorist benefits were composed of awards attributable to non-economic loss or "general damages," i.e., pain and suffering. *Id.*, 503 Pa. at 450, 469 A.2d at 1026. It is noteworthy that under the No-fault Act, even an uninsured owner-operator who had been injured in a motor vehicle accident was entitled to receive full and immediate professional treatment. Since appellant in the instant case has already been compensated for his economic losses in the form of basic loss benefits, we would not offend the policy provisions of the No-fault Act by denying him the right to recover uninsured motorist benefits.

> Compensating an injured victim of a vehicular accident is a paramount purpose of the legislatively adopted no-fault scheme. Thus, an injured victim, even if he or she is an uninsured owner, can receive "prompt and comprehensive professional treatment" and thus be rehabilitated and returned as a productive member of society as quickly as possible. See Section 102(a)(9) of the No-fault Act, 40 P.S. Sec. 1009.102(a)(9).

7.  In distinguishing the type of recoveries available under the two Acts, our Supreme Court quoted with approval the perceptive comments of Judge Teitelbaum in *Carnevale v. Sentry Insurance, A Mutual Company*, 469 F.Supp. 681 (W.D.Pa.1979):

> The purpose of Pennsylvania's No-fault law is to create a first party contractual right of action against one's own insurer for economic loss and to preserve the common law cause of action for non-economic loss where certain threshold conditions have been met. Uninsured motorist coverage is designed to provide protection against being left with a worthless cause of action against the uninsured driver for non-economic loss. Absent the set-off provision, plaintiff is reimbursed for his economic losses under the no-fault coverage and reimbursed for his non-economic losses up to the policy limit by the uninsured motorist coverage. In this manner, the legislatively intended distinction between economic and non-economic losses is preserved. Public policy is also furthered in that premiums paid for uninsured motorist coverage will provide protection against non-economic losses occasioned by an uninsured motorist's actions.

*Harleysville Mutual Insurance Co. v. Schuck,* 302 Pa.Super. 534, 538–539, 449 A.2d 45, 47 (1982).

Nor do we find it persuasive, as appellant argues, that neither section 601 [8] of the No-fault Act nor the Uninsured Motorist Act, 40 P.S. Sec. 2000 explicitly prohibits an uninsured owner-operator from recovering uninsured motorist benefits. Whereas section 601 expressly outlines the criminal penalties to be imposed upon those who violate the compulsory provisions of the Act, we would not expect this prohibition to be included in this section. In response to the second half of appellant's argument, it is noteworthy that "our supreme court has reiterated on several occasions that the Uninsured Motorist Statute is 'designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injuries through the negligent use of those highways by others.'" (citations omitted) *Adelman v. State Farm Mutual Automobile Insurance Company,* 255 Pa.Super. 116, 127, 386 A.2d 535, 540 (1978). This act was intended to provide the *insured* who was injured by an uninsured motorist, with the ability to recover those damages which he would have received had the uninsured motorist maintained liability insurance. *Id.,* 255 Pa. Superior Ct. at 128, 386 A.2d at 541. (emphasis added). As a result, the act by itself did not establish any rights in an

8. Section 601. OPERATION OF A VEHICLE WITHOUT SECURITY. Any owner of a passenger vehicle, for which the existence of security for basic loss benefits and tort liability insurance is a requirement for its legal operation upon the public highways of this State, under either section 104 or 110 of this act or sections 418, 419 or 420, act of April 29, 1959 (P.L. 58, No. 32), known as The Vehicle Code, who operates such motor vehicle or permits it to be operated upon a public highway in this State without having in full force and effect security complying with the terms of section 104 is guilty of a misdemeanor. And any other person who operates such a motor vehicle upon a public highway in this Commonwealth with the knowledge that the owner does not have such security in full force and effect is guilty of a misdemeanor. And each person convicted of a misdemeanor under the terms of this section may be fined not less than one hundred dollars ($100) or more than five hundred dollars ($500) or may be imprisoned for not more than six months or both.

*uninsured* motorist; it was only with the advent of the No-fault Act, that the uninsured victim of a motor vehicle accident could recover these benefits.[9] Consequently, we cannot find that the Uninsured Motorist Act, standing by itself, provides the coverage demanded by appellant.

In his final attempt to persuade us in molding our decision, appellant urges us to disregard the language of section 501 [10] from our analysis. In interpreting this provision, our Court in *Harleysville Mutual Insurance Company v. Schuck*, 302 Pa.Super. 534, 449 A.2d 45 (1982), found that under section 501 of the Act, an insurer who had paid "basic loss benefits" to the uninsured owner-occupant of a motor vehicle may recover those benefits paid out from the owner of the vehicle. Thus, the Court determined that the ultimate loss was to be borne by the uninsured owner and not by the assigned claims insurer. The following year, this Court again decided that the assigned claims insurer was not obligated to pay benefits to the estate of a deceased uninsured owner-operator, since the insurer immediately would have a claim for recoupment for all such benefits paid.[11] The following remarks were offered by the Court in support of its decision:

9. The new comprehensive system incorporated in the no-fault scheme should be viewed as complementing the earlier policy incorporated in the uninsured motorist act of requiring all motorists to carry liability protection against personal injury losses caused by uninsured motorists. *Tucci v. State Farm Ins. Co.*, 503 Pa. 447, 469 A.2d 1025 (1983).

10. Section 501 of the Act in pertinent part provides:
    The obligor obligated to pay basic loss benefits ... to a person occupying a motor vehicle, the owner of which is uninsured pursuant to this act ... shall be entitled to recover all the benefits paid
    ...

11. These following factors were listed in support of the court's decision denying benefits to the estate: (1) the practical ability of the insurer to obtain full reimbursement from the estate of the uninsured driver; (2) the insurer's chances of recovery would be adversely affected by the preference accorded the claim under the Probate, Estate and Fiduciaries Code; (3) motorists would be discouraged from maintaining automobile insurance coverage; (4) the estates of irresponsible vehicle owners would profit through the decedent's wrongdoing; (5) responsible drivers would suffer higher insurance premi-

In the situation of a deceased victim, the justification of speeding treatment and rehabilitation simply does not apply. We can perceive no other legislative intent in the Act to support a rule requiring payment to an uninsured deceased owner's estate in such a case, with undeserved enrichment for the estate and unrecoverable losses by the assigned risk insurer being the probable results in such circumstances.

*Ostronic v. Insurance Company of North America,* 314 Pa.Super. 146, 157, 460 A.2d 808, 814 (1983).

We too believe that in the instant case, there is no just reason for us to provide uninsured motorist benefits to a motorist who has violated the compulsory insurance law. Inasmuch as appellant already was compensated for his economic losses, we are unsympathetic to his present pleas. If we were to award these benefits in this instance, we would not only insult those motorists who have paid the high insurance premiums protecting against such catastrophes, but we would also impose an undue burden upon insurers to recover these benefits without any difficulties, i.e., insolvency of the owner-operator. Thus, in denying the rights of an uninsured owner-operator to receive uninsured motorist benefits under the assigned claims plan, we note the profound words of our late President John F. Kennedy when he said, "Our privileges can be no greater than our obligations. The protection of our rights can endure no longer than the performance of our responsibilities."

Order affirmed.

MONTEMURO, J., files concurring statement.

BROSKY, J., files dissenting opinion.

MONTEMURO, Judge, concurring:

I heartily join in the well-reasoned Opinion by Judge Olszewski. I wish to add only that my deliberations and resolve have been significantly influenced by the thoughtful

ums. *Ostronic v. Insurance Co. of North America,* 314 Pa.Super. 146, 156, 460 A.2d 808, 813 (1983).

Opinion of our esteemed colleague Judge James E. Rowley in *Johnson v. Travelers Insurance Co.*, 343 Pa.Super. 560, 495 A.2d 938 (1985).

BROSKY, Judge, dissenting.

This case is before us on appeal from judgment entered in favor of the defendant, Travelers Insurance Company. The sole issue for our determination is whether appellant, the owner/operator of an uninsured motor vehicle, allegedly innocent of causing an accident, is entitled to receive uninsured motorist benefits from the insurance company designated by the Pennsylvania Assigned Claims Plan[1] to process appellant's claim. Although I agree to a large extent with the majority Opinion, I believe dicta in Supreme Court cases should lead us to reach a different result.

In *Tubner v. State Farm Mutual Auto Ins. Co.*, 496 Pa. 215, 436 A.2d 621 (1981), our Supreme Court decided the issue of "whether a company designated to provide insurance coverage pursuant to the assigned claims plan of the No-Fault Act is required to pay not only 'basic loss benefits,' but also uninsured motorist benefits." In that case, a passenger in an uninsured automobile was killed in an accident, and the administratrix of his estate brought an action against the appellant insurance company to recover uninsured motorist benefits. Appellant had been designated as the participating insurer under the assigned claims provisions of the No-Fault Act, and had paid basic loss benefits. The company refused, however, to pay uninsured motorist benefits. The Supreme Court ruled that the administratrix was entitled to the benefits.

The court found that section 108(b)[2] of the Act required assigned insurers to compensate motor vehicle accident victims who were not otherwise covered by insurance, just

---

1. Section 108 of the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. § 1009.108.

2. Section 108(b) provides:
   (b) Assigned claims plan.—
   (1) Obligors other than self insurers and governments providing basic loss insurance in this Commonwealth shall organize and maintain, subject to approval and regulation by the commissioner,

as if a policy of basic loss insurance had been issued. The court stated: "Because assigned insurers are obligated precisely *as if they had issued basic loss insurance policies,* and because every policy of basic loss insurance issued in Pennsylvania *must include uninsured motorist coverage,* the right to uninsured motorist benefits under the assigned claims plan follows *a fortiori* from a straightforward reading of the statute and the regulation lawfully promulgated thereunder." 496 Pa. at 219, 436 A.2d at 623 (emphasis in original). The court reasoned that adopting a contrary view would have the effect of affording recovery of general damages to all motor vehicle victims injured by uninsured motorists except those covered by the assigned claims plan, with harsh results. The court added that because a claimant under the assigned claims plan is covered as if he had obtained a policy of basic loss insurance, his right to uninsured motorist benefits cannot be distinguished from that of holders of valid insurance policies.

In *Modesta v. SEPTA,* 503 Pa. 437, 469 A.2d 1019 (1983), a bus passenger, injured when the bus in which she was

as [sic] assigned claims bureau and an assigned claims plan and adopt rules for their operation and for assessment of costs on a fair and equitable basis consistent with this act. If such bureau and plan are not organized and maintained in a manner considered by the commissioner to be consistent with this act, he shall organize and maintain an assigned claims bureau and an assigned claims plan.

Each obligor insurer providing basic loss insurance in the Commonwealth shall participate in the assigned claims bureau and the assigned claims plan. Costs incurred shall be allocated fairly and equitably among the obligors.

(2) The assigned claims bureau shall promptly:

(A) assign each claim for no-fault benefits to an assignee who shall be a participating insurer; and

(B) notify the claimant of the identity and address of such assignee.

Claims shall be assigned so as to minimize inconvenience to claimants. The assignee thereafter has rights and obligations as if he had issued a policy of basic loss insurance complying with this act applicable to the injury or, in a case involving the financial inability of a restoration obligor to perform its obligations, as if the assignee had written the applicable basic restoration insurance, undertaken the self-insurance, or lawfully obligated itself to pay basic loss benefits.

riding was struck from behind by an uninsured motorist, sought uninsured motorist benefits from the transportation authority. The Supreme Court held on appeal that the transportation authority, as a self-insurer, was required to provide uninsured motorist coverage. The court stated:

> [U]ntil today there were two groups of individuals who received no uninsured motorist protection: *uninsured motorists who caused accidents* and uninsured occupants of self-insured vehicles. *It is reasonable to deny uninsured motorist coverage to the first group, since they have not only chosen not to comply with the mandatory insurance law, but have also caused the accidents which resulted in their injuries;* however, it makes no sense in terms of any policy of deterrence, retribution or liberal construction of a remedial statute, to deny uninsured motorist coverage to uninsured individuals *who have not caused the accidents* which resulted in their injuries, simply because they were occupants of self-insured vehicles. 503 Pa. at 443, 469 A.2d at 1022–23 (footnotes omitted; emphasis added).

The court went on to hold that the uninsured occupant of the self-insured vehicle was entitled to uninsured motorist coverage. Although the quoted language does not constitute the holding of *Modesta,* it seems to indicate the Supreme Court's feeling that only uninsured motorists who are actually responsible for accidents are to be denied uninsured motorist coverage.

Accepting the result that an innocent but uninsured owner/operator may recover uninsured motorist benefits, there are two ways to proceed. We might find that a party claiming uninsured motorist benefits should be entitled to receive such benefits from the assigned claims carrier, who could later recover the amounts paid if the claimant was found to have caused the accident. This approach would be supported by a broad interpretation of Section (d) of the Uninsured Motorist Act. That section provides: "In the event of payment to any person under the coverage required by this section, the insurer making such payment

shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery *of such person* against any person or organization legally responsible for the bodily injury for which such payment is made...." (Emphasis added.)

Arguably, this section would give the insurance company the right to recover from the claimant any uninsured motorist benefits paid to the claimant if the claimant was responsible for causing the accident. Such an approach would be analogous to that followed by our court in *Harleysville Mutual Insurance Co. v. Schuck*, 302 Pa.Super. 534, 449 A.2d 45 (1982), in which a panel of our court approved the payment of No-Fault basic loss benefits to an owner/operator of an uninsured vehicle, and held that the insurance company was entitled to recover those benefits. In *Schuck*, our court noted that compensating an injured victim of a vehicular accident was one of the main purposes of the No-Fault Act, "[t]hus an injured victim, even if he or she is an uninsured owner, can receive 'prompt and comprehensive professional treatment' and thus be rehabilitated and returned as a productive member of society as quickly as possible." 302 Pa.Super. at 538, 449 A.2d at 47.[3]

The other, and I believe better, approach would be to not require that uninsured motorist benefits be paid until such time as a determination has been made that the claimant was not at fault in causing the accident. The considerations of *Schuck* do not apply in the context of uninsured motorist benefits, since basic loss benefits have, in at least the vast majority of cases, already been paid, frequently directly to the provider of medical services or supplies, and since the uninsured motorist benefits will therefore in most cases be compensation for non-economic detriment, rather than being required for the claimant's rehabilitation. Payment of uninsured motorist benefits can, without causing undue hard-

**3.** It should be noted that basic loss benefits may include compensation for work loss and replacement services loss as well as for medical expenses. It is not clear that the rationale of *Schuck* applies to such other basic loss benefits, nevertheless, the opinion did not differentiate among these types of basic loss benefits.

ship, await a determination of fault. Uninsured motorist benefits paid to a claimant would very likely be put to use by the claimant, and the insurance company would not be certain to obtain the money that it had paid out. The more sensible of the two approaches would therefore appear to be to require the insurance company to pay the uninsured motorist benefits only after a determination had been made that the claimant would not be required to return some or all of such payments to the insurance company.

I would find that the trial court erred in entering judgment in favor of appellee insurance company. Once it was determined that the claimant, the party entitled to basic loss benefits under the assigned claim provisions of No-Fault, was not at fault in causing the accident, the claimant would be entitled to receive uninsured motorist benefits from the obligor that had paid the basic loss benefits as if the claimant had been insured by a policy of basic loss insurance with uninsured motorist coverage. I would reverse the trial court and remand for further proceedings.