449 A.2d 45

**HARLEYSVILLE MUTUAL INSURANCE COMPANY, a Corporation, Appellant,**

v.

**Jean Miklavic SCHUCK, an individual, Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 31, 1981.

Filed Aug. 6, 1982.

Harvery W. Daniels, Monroeville, submitted a brief on behalf of appellant.

Richard Urick, Aliquippa, for appellee.

Before WICKERSHAM, WIEAND and BECK, JJ.

WIEAND, Judge:

If an insurer pays no-fault benefits to an uninsured owner/occupant of a motor vehicle pursuant to an assigned claim, may the insurer thereafter recover such payments in an action filed against the same, uninsured owner/occupant under Section 501 of the Pennsylvania No-fault Motor Vehicle Insurance Act?[1] The trial court held that there could be no recovery and sustained preliminary objections in the nature of a demurrer to the insurer's complaint. We reverse.

Jean Miklavic Schuck, the defendant-appellee, was injured when the vehicle which she owned and which she was operating was struck in the rear by another vehicle. As a result of injuries received in the accident, she incurred medical expenses of $365.00 and sustained a wage loss of $1,345.14. The vehicle which she owned and was operating was uninsured. Therefore, her claim for "basic loss benefits" was assigned to Harleysville Mutual Insurance Company, the plaintiff-appellant, under Section 108 of the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. § 1009.108. After appellant had paid the claim, it commenced an action in assumpsit against appellee to recover the payments which it had made.

■ Section 501 of the Pennsylvania No-fault Motor Vehicle Insurance Act is unambiguous. It provides:

The obligor obligated to pay basic loss benefits for accidental bodily injury to a person occupying a motor vehicle, the owner of which is uninsured pursuant to this act or to the spouse or relative resident in the household of the owner or registrant of such motor vehicle, shall be entitled to recover all the benefits paid and appropriate loss or adjustments costs incurred from the owner or registrant of such motor vehicle or from his estate. The failure of

1. Act of July 19, 1974, P.L. 489, No. 176, § 501, 40 P.S. § 1009.501.

the person to make payment within thirty days shall be grounds for suspension or revocation of his motor vehicle registration and operator's license.

This section permits an insurer who has paid "basic loss benefits" to an occupant of an uninsured vehicle to recover the benefits so paid from the owner of the vehicle. In the instant case, the owner of the uninsured vehicle was also the occupant to whom basic loss benefits had been paid by the obligor-insurer. Because those benefits did not exceed the statutorily created threshold,[2] a common law action against the third party tortfeasor could not be maintained. Under such circumstances, must the ultimate loss be borne by the insurer to whom the claim has been assigned or, as appellant urges, by the uninsured owner/operator who has failed to comply with the statutory mandate to purchase insurance coverage for his or her vehicle?

Appellee argues, and the trial court concluded, that the legislature could not reasonably have intended that the insurer be able to recover benefits paid to an uninsured owner/occupant because to allow such recovery would render illusory the payment of basic loss benefits. We disagree. A similar argument was rejected by Judge Kalish of the Court of Common Pleas of Philadelphia County in *General Accident Group v. Doctorovitz*, 13 Pa.D. & C.3d 630 (1979). We are indebted to him for an able opinion and are persuaded by his sage observations and comments.

■ Section 501 dictates clearly that an uninsured owner shall ultimately bear the risk of loss in an uninsured motorist claim. The legislative intent has been articulated clearly and unconditionally. The statutory language permits no exception. Under Section 501 the insurer obligated to pay a claim for "basic loss benefits" by an occupant of an uninsured vehicle *"shall be entitled to recover ... from the owner ... of such motor vehicle...."* Liability of the owner of an uninsured motor vehicle under this section is absolute. *See Kottler v. Rick*, 12 Pa.D. & C.3d 316, 318 (C.P. Allegheny, 1979).

**2.** *See* 40 P.S. § 1009.301(a)(5).

■ The liability imposed by this section, therefore, is broad enough to include those basic loss benefits which were paid, pursuant to the assigned claims plan of the Act, to appellee in the instant case. While such an interpretation of Section 501 may appear, at first blush, to take away benefits granted by another part of the Act, we are constrained to conclude that the only construction consistent with the intended purpose of the no-fault scheme is one which uniformly places the ultimate risk of loss upon the uninsured owner.

The effect of a contrary interpretation would be to permit the owner/operator of an uninsured motor vehicle to benefit permanently from a law whose requirements he or she deliberately chose to disobey. The legislative no-fault scheme, as announced in the very title of the Act, is to require "insurance for all motor vehicles . . . . registered in Pennsylvania. . . . " If an owner fails to comply with this requirement, it is logical and reasonable that he or she should ultimately be assessed for the amount of the actual loss. Such an interpretation is consistent with the legislative intent announced in Section 301(a) that "(1) An owner of a motor vehicle involved in an accident remains liable if, at the time of the accident, the vehicle was not a secured vehicle." It would be incongruous to allow an uninsured owner who also happens to be an occupant of his or her uninsured vehicle to receive permanently those benefits which insured owners attain by purchasing the insurance coverage mandated by the statute. Similarly, it is nonsensical to allow an uninsured owner/occupant to escape liability which has been unequivocally established for uninsured owners and to which he or she would be required to respond if the occupant were another person.

The rationale for requiring an insurer to pay an occupant's claim for basic loss benefits before ultimate liability has been determined seems clear. Compensating an injured victim of a vehicular accident is a paramount purpose of the legislatively adopted no-fault scheme. Thus, an injured victim, even if he or she is an uninsured owner, can receive "prompt and comprehensive professional treatment" and

thus be rehabilitated and returned as a productive member of society as quickly as possible. *See* Section 102(a)(9) of the No-fault Act, 40 P.S. § 1009.102(a)(9). Only after this purpose has been accomplished does the statute permit a determination of ultimate liability.

Section 501, when thus interpreted, puts the uninsured owner/occupant ultimately in the position he would have been in "without the benefit of the act and restores the insurance company, who is entitled to a measure of predictability, to its position prior to the assigned claim." *General Accident Group v. Doctorovitz, supra* at 635.

The construction which we have placed on Section 501, to recapitulate, is recommended by the following considerations: (1) it prevents an uninsured owner/operator from receiving a windfall by virtue of his or her defiance of the statutory mandate that all vehicles be insured; (2) it benefits, or at least treats fairly, those insured motorists whose compliance with the No-fault Act by the payment of premiums for the mandated insurance coverage makes the no-fault system possible; (3) it aids in deterring owners of motor vehicles from refusing to provide insurance coverage which has been mandated by the legislature and thereby encourages that compliance with the statute which makes the no-fault scheme possible; and (4) it places the risk of loss upon those who have deliberately refused to comply with the statute while guaranteeing that even such persons will receive prompt and comprehensive professional treatment if injured in a vehicular accident.

Reversed and remanded for further proceedings consistent with this opinion.