507 A.2d 828

**HARLEYSVILLE MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Joseph SMITH, Appellee.**

Superior Court of Pennsylvania.

Submitted Jan. 22, 1986.

Filed March 27, 1986.

Reargument Denied May 2, 1986.

Kenneth D. Powell, Philadelphia, for appellant.

Allen L. Feingold, Philadelphia, for appellee.

Before CAVANAUGH, OLSZEWSKI and TAMILIA, JJ.

OLSZEWSKI, Judge:

This matter comes before this Court on appeal from an order of the lower court vacating and striking the order of November 30, 1984, and granting summary judgment in favor of appellee. The present action is brought pursuant to 40 P.S. Sec. 1009.501 of the Pennsylvania No-Fault Motor Vehicle Insurance Act.

On October 8, 1977, Mrs. Smith, the passenger in a car driven by her husband the appellee, was injured in an automobile accident. Since appellee was an uninsured motorist, Mrs. Smith applied for basic loss benefits under the

Pennsylvania No-Fault Motor Vehicle Insurance Act[1] on or about January 12, 1978. Pursuant to Sec. 1009.108 of this Act, the claim was assigned to Harleysville Mutual Insurance Company on or about January 26, 1978. Mrs. Smith received her first benefits from the assigned insurer on June 23, 1981. Appellant then commenced an action against appellee on August 9, 1982, to recover the payments it had made to Mrs. Smith under the assigned claims plan.

It is noteworthy that the insurer's right to recover these benefits is unambiguously provided for under Sec. 1009.501 of the No-Fault Act. This section in pertinent part provides:

The obligor obligated to pay basic loss benefits for accidental bodily injury to a person occupying a motor vehicle, the owner of which is uninsured pursuant to this act or to the spouse or relative resident in the household of the owner or registrant of such motor vehicle, shall be entitled to recover all the benefits paid and appropriate loss or adjustments costs incurred from the owner or registrant of such motor vehicle or from his estate. The failure of the person to make payment within thirty days shall be grounds for suspension or revocation of his motor vehicle registration and operator's license.

Act of July 19, 1974, P.L. 489, No. 176, Sec. 501, 40 P.S. Sec. 1009.501, repealed Act of February 12, 1984, P.L. 26, No. 11, Sec. 8(a) effective October 1, 1984.

Now, in what appears to be a case of first impression before this court, we are asked to resolve the following two issues: (1) when does a cause of action by an assigned claims insurer accrue pursuant to Sec. 1009.501 of the No-Fault Act, and (2) what statute of limitations governs this action. Appellant argues that its cause of action should accrue when it makes its first payment to the claimant and that a six-year statute of limitations should govern the action. Appellee contends that a four-year statute of limitations for this action should begin to run at

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. Secs. 1009.101–701, repealed Act of February 12, 1984, P.L. 26, No. 11, Sec. 8(a) effective October 1, 1984.

the time of the accident. In adopting appellee's argument, the lower court reasoned that since the recipient of benefits under the plan is treated as though he had been issued a no-fault policy by the assigned insurer, any action by the injured party for such benefits must be premised upon an implied contract. Analogizing that situation to the instant case, the court then concluded that an insurer's claim against the uninsured owner is similarly based upon a contract implied in law. We disagree.

## I

■ It is generally well accepted that when an insurance carrier, acting as subrogee of its insured, brings an action against a third party, the cause of action for the purposes of the statute of limitation begins to run on the day the insured sustained an injury to his person and not on the day the insurer suffered an "injury" as a result of the arbitrator's award. *Insurance Co. of North America v. Carnahan*, 446 Pa. 48, 284 A.2d 728 (1971). Our supreme court noted that as a subrogee, the insurer possesses no greater rights than its insured, since it was the insured's right of action which the insurer was pursuing when it filed the action.

Appellee in the present case proposes a similar argument; nevertheless, we hesitate to adopt this reasoning because we believe the factual situation before us is distinguishable.[2] Unlike the present case, the court in *Carnahan* found that the insurer's subrogation rights were the consequence of a contractual agreement between the insured and insurer. It is noteworthy that pursuant to Sec. 1009.108(b)[3] of the No-Fault Act an assigned claims insurer does not

2. An insurance policy which provided "uninsured motorist" coverage was in effect at the time of the accident in *Carnahan*.

3. Section 1009.108(b)(2) of the No-Fault Act provides:
   (2) The assigned claims bureau shall promptly:
       (A) assign each claim for no-fault benefits to an assignee who shall be a participating insurer; and
       (b) notify the claimant of the identity and address of such assignee.

enter freely into a relationship with the injured party, but rather is obligated by law to compensate the party under a uniform system providing for the "maximum feasible restoration" of all victims of motor vehicle accidents. *See Tubner v. State Farm Mutual Automobile Insurance Co.*, 496 Pa. 215, 218, 436 A.2d 621, 622 (1981). In accordance with this plan, the Act guarantees that even an uninsured motorist will receive prompt and comprehensive professional treatment of injuries in a vehicular accident. *Harleysville Mutual Insurance Co. v. Schuck*, 302 Pa.Super. 534, 539, 449 A.2d 45, 47 (1982).

> Compensating an injured victim of a vehicular accident is a paramount purpose of the legislatively adopted no-fault scheme. Thus, an injured victim, even if he or she is an uninsured owner, can receive "prompt and comprehensive professional treatment" and thus be rehabilitated and returned as a productive member of society as quickly as possible. See Section 102(a)(9) of the No-fault Act, 40 P.S. Sec. 1009.102(a)(9).

*Id.*, 302 Pa.Superior Ct. at 538–539, 449 A.2d 42.

Yet, despite the strong language favoring compensation, the legislature nevertheless intended an assigned claims insurer to recover what benefits it has paid under the Act, thereby "placing the ultimate risk of loss upon those who have deliberately refused to comply with the statute." *Id.*

■ After a careful review of this matter, we find that the relationship between Harleysville and Mrs. Smith is one imposed by law under Sec. 1009.108(b) of the No-Fault Act and does not arise as the result of a contractual agreement freely entered into by the parties. As a result, the statute of limitations will only accrue on an insurer's cause of action under 40 P.S. Sec. 1009.501 when it has been assigned the claim under the assigned claims plan.[4] We

---

4. Further support for this proposition can be found in *Tierney v. Pennsylvania Assigned Claims Plan*, 319 Pa.Super. 299, 466 A.2d 168 (1983). In this case the court noted:

> We agree that the language of Sec. 1009.108(b)(2) appears obligatory without reservation; nevertheless, under these facts, (the Plan)

therefore conclude, on our review of the record, that appellant's cause of action against the uninsured motorist accrued on January 26, 1978.

## II

■ With respect to appellant's second argument, we must now decide which statute of limitations is applicable. The lower court reasoned on the basis of *Tubner*, that any action by an injured party for no-fault benefits must be premised upon an implied contract whereby coverage is provided to the insured party. It then concluded that when an assigned obligor seeks reimbursement from an uninsured owner for payments made pursuant to the assigned claims plan, that action is also based upon an implied contract. We disagree.

Although Sec. 1009.501 of the No-Fault Act gives the insurer the right to recover the benefits it paid out under the assigned claims plan, it however does not create a contract between the third party uninsured owner and the assigned claims insurer. Nor does a contract arise by virtue of Sec. 1009.108 of the same Act. Inasmuch as the assigned claims insurer is not in a contractual relationship with either the third party tortfeasor or the injured party, the insurer's claim for reimbursement therefore falls under 42 Pa.C.S.A. Sec. 5527[5] and the six-year statute of limita-

must have the authority to reject the claim without first assigning it to a participating insurer. If (the Plan) had assigned the claim to a participating insurer; Sec. 1009.201(b) would have been rendered meaningless with respect to accidents occurring outside the Commonwealth. Once the claim is assigned, the "assignee thereafter has rights and obligations as if he had issued a policy of basic loss insurance complying with this Act applicable to the injury." 40 P.S. Sec. 1009.109(b).

Consequently, if the statute of limitations were to begin to run against an insurer on the day of the accident, as the appellee and the lower court proposes, any delay in assigning the claim would jeopardize an insurer's rights under the Act. The statute of limitations, therefore, should not begin to run against the insurer until the claim has been assigned.

5. The six-year statute of limitations found in 42 Pa.C.S.A. Sec. 5527 (Purdon 1985) provides:

tions governs. *See Reliance Insurance Co. v. Gullotta,* 28 Pa.D. & C.3d 365 (1983). Since appellant filed its claim pursuant to 40 P.S. Sec. 1009.501 against the uninsured owner on August 9, 1982, we find that this cause of action was properly brought before the expiration of the statute of limitations.

We therefore reverse the order of the lower court and remand the case for further proceedings consistent with this opinion. Jurisdiction is relinquished.

Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years.