518 A.2d 1213

Peter H. SHAFFER, Administrator of the Estate of Gail F. Jakovac and Trustee Ad Litem of Keirsten Leigh Jakovac and Gerald Jakovac

v.

PENNSYLVANIA ASSIGNED CLAIMS PLAN INSURANCE COMPANY OF NORTH AMERICA and Nationwide Mutual Insurance Company.

Appeal of NATIONWIDE MUTUAL INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued Jan. 29, 1986.

Filed Dec. 4, 1986.

Lee C. McCandless and James E. Kerr, Butler, for appellant.

William D. Kemper, Butler, for Shaffer, appellee.

Stephen R. Mlinac, Pittsburgh, for Pa. Assigned, appellee.

Before CIRILLO, President Judge, and DEL SOLE and BECK, JJ.

BECK, Judge:

Appellees Gerald Jakovac (Gerald) and Peter H. Shaffer [1] filed claims against Nationwide Mutual Insurance Company (Nationwide) and Insurance Company of North America (INA) under the No-fault Motor Vehicle Insurance Act (No-fault Act) [2] and the Uninsured Motorist Act.[3] The court granted INA's motions for summary judgment, and INA was released from the case. Appellant Nationwide was found liable to the Appellees.

Nationwide appeals the order granting summary judgment to INA and the judgment awarding damages in favor of Gerald Jakovac, Keirsten Jakovac, and the estate of Gail Jakovac. For the following reasons we quash the appeal as to the granting of summary judgment to INA and otherwise reverse in part and affirm in part the judgment of the Court of Common Pleas of Butler County.

The pertinent facts underlying this appeal are undisputed. On November 11, 1979, Gerald was driving with his wife Gail as a passenger in Gail's uninsured 1977 Toyota automobile when the car struck a bridge abutment. Gerald was injured, and Gail died as a result of injuries sustained in the one-car accident. At the time of the accident, Gerald owned a 1977 Ford pickup truck which was insured by Nationwide under a business auto policy. The only motor vehicle designated in the business auto policy as a "covered automobile" was Gerald's 1977 Ford pickup truck, and Gerald was listed as the sole policyholder of the business auto policy. As a result of the accident, suit was filed on behalf of Gerald, Gail's estate, and Keirsten (Gerald and Gail's daughter) against the Pennsylvania Assigned Claims Plan,[4]

1. As administrator of the estate of Gail F. Jakovac and as trustee ad litem for Keirsten Leigh Jakovac (daughter of Gerald and Gail Jakovac).

2. Act of July 19, 1974, P.L. 489, 40 P.S. §§ 1009.101–.601, repealed by the Act of February 12, 1984, P.L. 26.

3. Act of August 14, 1963, P.L. 909. as amended by the Act of December 19, 1968, P.L. 1254, 40 P.S. § 2000.

4. The nature of the assigned claims plan provision of the No-fault Act was explained by the Pennsylvania Supreme Court in *Tubner v. State*

INA as the assignee insurer under the assigned claims plan of the No-fault Act, and Nationwide as the insurer under Gerald's business auto policy.

All of the parties to the suit filed motions for summary judgment in their favor on the issues of liability raised by the suit. In the trial judge's order of July 23, 1982, summary judgments were granted as follows:

(1) for Gerald and against Nationwide on Gerald's no-fault claim, plus interest and attorney's fees;

(2) for Nationwide and against Gerald on Gerald's uninsured motorist claim;

(3) for Keirsten and against Nationwide on Keirsten's no-fault claim, plus interest and attorney's fees;

(4) for Nationwide and against Keirsten on Keirsten's uninsured motorist claim;

(5) for Nationwide and against Gail's estate for the estate's no-fault claim;

(6) for Gail's estate and against Nationwide on the estate's uninsured motorist claim, and

(7) for INA and against Gerald, Keirsten, and Gail's estate on all claims.

In summary, INA was released from all claims to all parties. Nationwide's liability to Gerald and Keirsten for no-fault benefits and Nationwide's liability to Gail's estate for uninsured motorist benefits were to be determined by the trial court. After a hearing, an order was issued by the trial court on September 17, 1984, assessing damages against Nationwide on the respective claims.

Nationwide then filed a timely motion for post-trial relief asserting, inter alia, that the trial court had erred in (1)

*Farm Mutual Automobile Insurance Co.,* 496 Pa. 215, 436 A.2d 621 (1981), *reargument denied,* December 29, 1981. "Under Section 108(b) [of the No-fault Act], insurers are assigned to compensate motor vehicle accident victims for whom insurance is not carried *as if* a policy of basic loss insurance had been issued...." *Tubner,* 496 Pa. at 217, 436 A.2d at 622.

ruling that Nationwide, rather than INA as the assigned claims plan insurer, was the appropriate obligor; (2) failing to recognize the No-fault Act's statute of limitations as a bar to the claim in the amended complaint for survivor's loss; (3) assessing attorney's fees against Nationwide; (4) refusing Nationwide a setoff against Gail's estate under section 501 of the No-fault Act for basic loss benefits payable by Nationwide, and (5) ordering payment of uninsured motorist benefits to Gail's estate since the uninsured vehicle was owned by Gail, the decedent. Nationwide's motion for post-trial relief was denied, and judgment was entered against Nationwide. Thereafter, Nationwide appealed.

In this appeal, Nationwide reiterates the arguments raised in its motion for post-trial relief. First, Nationwide contends that the trial court improperly adjudged Nationwide, rather than INA, liable as the obligor for the no-fault claims of Gerald and Keirsten and for the uninsured motorist claim of Gail's estate. In essence, Nationwide contests the propriety of the trial court's July 23, 1982, order granting summary judgments for INA on all the no-fault and uninsured motorist claims presented on behalf of Gerald, Keirsten, and Gail's estate. Initially, we consider whether Nationwide has timely appealed the issues concerning the summary judgments in favor of INA since the timeliness of an appeal affects our court's jurisdiction. *Murphy v. Brong*, 321 Pa.Super. 340, 468 A.2d 509 (1983).

Pennsylvania Rule of Appellate Procedure 903(a) specifies that a notice of appeal is timely if it is filed within thirty days after entry of the order being appealed. Nationwide's notice of appeal was filed on January 11, 1985, approximately two and one-half years after the trial court granted summary judgments to INA. However, Nationwide asserts that the trial court's July 23, 1982, order granting INA summary judgments was not a final, appealable order. Nationwide maintains that only the September 17, 1984,

judgment[5] entered against it was properly appealable as a final and duly entered order in the case. Inasmuch as Nationwide's appeal was filed within thirty days of the entry of the September 17, 1984, judgment, Nationwide argues that its appeal is timely. *See* Pa.R.A.P. 301. We disagree.

It is axiomatic that with the exception of certain enumerated classes of interlocutory orders not germane to this appeal,[6] an appeal lies only from a final order. Pa.R. A.P. 341; Pa.R.A.P. 1701(b)(6); *Fried v. Fried*, 509 Pa. 89, 501 A.2d 211 (1985); *Murphy*. An order is final if it ends the litigation, disposes of the entire case, or effectively puts a party out of court by denying him the opportunity to present the merits of the case to the court. *Fried*. Hence, for example, an appeal cannot be taken from a court order which merely determines that a particular party is liable to pay damages, but the appeal must, instead, be taken from the entry of judgment which assesses the amount of damages payable by the liable party and thereby finally disposes of the entire case. *Brown v. State Farm Mutual Automobile Insurance Co.*, 326 Pa.Super. 489, 474 A.2d 346 (1984); *Navarro v. Ohio Casualty Insurance Co.*, 295 Pa.Super. 151, 441 A.2d 394 (1982); *Inselberg v. Employers Mutual Companies*, 291 Pa.Super. 406, 435 A.2d 1290 (1981); *see Stotsenburg v. Frost*, 465 Pa. 187, 348 A.2d 418 (1975) (Roberts, J., dissenting), *reh'g denied*, December 30, 1975. This axiom concerning appeals from final orders has been codified in Pennsylvania Rule of Civil Procedure 1035(b) which states that "[a] summary judgment, interlocutory in character, may be rendered on the issues of liability alone although there is a genuine issue as to the amount of damages." *See, e.g., Brown; Navarro; Inselberg.*

5. The September 17, 1984, judgment resolved the matters of all other parties in the case except for INA which was no longer in the case after the July 23, 1982, grant of summary judgments to INA.

6. *See* Pa.R.A.P. 311 (interlocutory orders appealable as of right); Pa.R.A.P. 312 (interlocutory orders appealable upon certification of the trial court).

In the case sub judice, the trial court's July 23, 1982, order released INA from the case and did not apportion any liability against INA. Accordingly, there was not an award of damages against INA to reduce to judgment. *See Brown; Navarro; Inselberg;* Pa.R.C.P. No. 1035(b). The granting of summary judgments to INA constituted a judicial determination that as a matter of law Gerald, Keirsten, and Gail's estate did not have a cause of action on which they could recover against INA. *See, e.g., United States National Bank in Johnstown v. Johnson,* 506 Pa. 622, 487 A.2d 809 (1985) (order sustaining preliminary objections in the nature of a demurrer is a final, appealable order which is neither required nor permitted to be reduced to judgment); *Miller v. Hurst,* 302 Pa.Super. 235, 448 A.2d 614 (1982) (order refusing to remove a compulsory nonsuit is a final, appealable order which is not required to be reduced to judgment). Therefore, that portion of the July 23 order which granted INA summary judgments terminated the litigation against INA and comprised a final, appealable order. *Rossi v. Pennsylvania State University,* 340 Pa.Super. 39, 489 A.2d 828 (1985) (order granting summary judgments as to some defendants in multiple-defendant suit is a final, appealable order as to those defendants released from litigation); *see Dash v. Wilap Corp.,* 343 Pa.Super. 584, 495 A.2d 950 (1985) (order dismissing a complaint as to one defendant in a multiple-defendant suit is a final, appealable order since it ends litigation with respect to the defendant against whom the complaint was dismissed).

Under Pa.R.A.P. 903(a), that part of the trial court's order granting INA summary judgments was final and appealable within thirty days of the order's entry. "The date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure [is] the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by PA.R. Civ.P. 236(b)." Pa.R.A.P. 108(b). The trial court docket in the present case clearly shows that on July 26, 1982, copies of the trial court's July 23 order and accompanying memorandum opinion were sent to the parties' attorneys of

record in accordance with Pa.R.C.P. No. 236. Consequently, in the instant case, July 26, 1982, is the order entry date which commenced the running of the thirty-day period for appealing the granting of summary judgments in favor of INA. Since the granting of summary judgments in favor of INA required no further action by the court as to INA, Nationwide should have filed its appeal as to INA within thirty days of July 26, 1982 (the date of entry of the summary judgments) and should not have waited until the matters among the other parties were finally litigated and the resolution of those matters was reduced to judgment.

Being well outside the applicable thirty-day appeal period, Nationwide's notice of appeal filed on January 11, 1985, is untimely as to the issues involving INA's summary judgments. Therefore, we quash that portion of Nationwide's appeal which concerns INA's liability for any no-fault and uninsured motorist claims.

■ We note that the record reveals that appellees-plaintiffs appealed the July 23, 1982 order. The appeal was quashed on Nationwide's motion. As to the appellees-plaintiffs, the appeal was clearly interlocutory. Nationwide, as subsequent case law shows, was required to appeal the July 23, 1982 order as it related to INA. It did not appeal, but instead moved to quash the appeal of appellees-plaintiffs. At that point, it was clear, given the policy and decisions of the No-fault Act, that Nationwide would be liable for some amounts to plaintiffs.

■ In any event, Nationwide cannot avoid liability. Nationwide contends that its policy with Gerald covered only his 1977 Ford truck and not Gail's 1977 Toyota. Therefore, it contends, it is not liable for any amount resulting from the accident. Under different facts, we might agree. Gerald, however, was driving the Toyota at the time of the accident. The Toyota was not insured. It is the intent of the No-fault Act to establish at reasonable cost to the purchaser of insurance a system of prompt and adequate basic loss benefits for motor vehicle accidents. Under these facts, the security applicable to an injury to an insured is

the security covering the victim. 40 P.S. § 1009.204(a)(2). Thus, Gerald as a victim in this accident is covered by his Nationwide policy. In this respect, we note that one of the essential elements of the Act is that benefits for injuries arising out of a motor vehicle accident generally will be paid on a first party basis by the carrier for the insured. Shrager, *Pennsylvania No-fault Motor Vehicle Insurance Act* § 1:15.3 (1979). The security follows the person and not the vehicle. *Id.* This statement, of course, is not one admitting of no exception. For example, an employee in an accident while driving or occupying an employer's vehicle collects on the policy covering that vehicle. 40 P.S. § 1009.204(a)(1). We, however, deem it appropriate under these facts that Gerald is covered by the Nationwide policy.

■ It is equally appropriate that Gail's estate and Keirsten are deemed to be covered by the Nationwide policy. An insured, for purposes of Section 204(a)(2), includes a spouse and a minor in the custody of a named insured if they are not identified by name as an insured in any other policy and are in residence with the named insured in the same household. 40 P.S. 1009.103. Gail and Keirsten come within the terms of this definition. Therefore, they are covered by the policy and Nationwide is the obligor under these facts.

Nationwide argues that this case is controlled by a decision of a panel of this court in *Insurance Company of North America v. Hippert,* 354 Pa.Super. 333, 511 A.2d 1365 (1986). In *Hippert,* this court gave effect to an exclusion clause in determining that the insurer which insured a vehicle owned by a relative living with the victim was not required to pay no-fault benefits to the victim if that insurer did not insure the vehicle owned by the relative and operated by the victim.

We conclude that *Hippert* is inapposite to this case. The Nationwide policy does not contain the exclusionary language found in the policy in *Hippert.*

Nationwide argues alternatively that there is an exclusionary term in the policy that should be given effect. It

claims that its temporary substitute automobile coverage term implicitly excludes coverage of Gail's Toyota. This term provides that a temporary substitute automobile that is covered by the Nationwide policy is one which:

... is an auto used temporarily to replace a covered auto while it is being serviced or repaired or while it is broken down or damaged. You must have permission to use the temporary auto from its owner, and it cannot be owned by you or anyone who lives with you.

■ We conclude that it is impermissible to address this question because Nationwide denies coverage on this basis for the first time on appeal. In an answer in an action on an insurance policy, the defendant must state all material facts upon which he relies for a defense specifically and with sufficient detail. 5 Standard Pennsylvania Practice 2d § 27:52 (1982). In its preliminary objections and answer to the complaint, Nationwide averred only that the 1977 Toyota was not covered. It did not raise this particular ground as a reason to exclude coverage. As such, this defense was waived and it cannot be considered as it is raised for the first time on appeal. *Dilliplane v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974); Pa.R.C.P. 1032; Pa.R.A.P. 302.

Nationwide next contends that the trial court erred in not holding that Keirsten's claim for survivor's loss benefits was barred by the statute of limitations provided in section 106(c)(2) of the No-fault Act. Section 106(c)(2) states in pertinent part that "[i]f no-fault benefits have not been paid to the deceased victim or his survivor or survivors, an action for survivor's benefits may be commenced not later than one year after the death or four years after the accident from which death results, whichever is earlier." The parties do not dispute that the one-year statute of limitations applies to the present case. However, the parties disagree whether Keirsten's survivor's loss claim was brought within the statutory period.

The Jakovacs' automobile accident occurred on November 11, 1979. Appellees began their action against Nationwide

on November 10, 1980, by filing a praecipe for a writ of summons as permitted by Pa.R.C.P. No. 1007(1). On April 22, 1981, appellees filed a complaint against INA and Nationwide. The complaint alleged several no-fault and uninsured motorist claims but did not state a cause of action for survivor's benefits against Nationwide. On June 12, 1981, Keirsten filed an amended complaint[7] in which, for the first time, she averred survivor's loss claims against Nationwide. Under the heading of New Matter in an amended answer, Nationwide pled the statute of limitations as a defense to Keirsten's survivor's loss claims.[8] Pa.R.C.P. No. 1030. The trial court awarded Keirsten the statutory maximum of $5,000 in survivor's loss benefits. 40 P.S. § 1009.202(d).

Keirsten maintains that her survivor's loss claim was timely raised because the statute of limitations relevant to such claims was tolled by the filing of the praecipe for a writ of summons used to commence the no-fault action against Nationwide. Nationwide insists that the survivor's loss claim was asserted well after the expiration of the one-year statute of limitations and should have been disallowed. For the following reasons, we agree with Nationwide's position and reverse the trial court's judgment awarding Keirsten survivor's loss benefits and interest thereon.

Our resolution of this issue is controlled by our decisions in *Boarts v. McCord*, 354 Pa.Super. 96, 511 A.2d 204 (1986), *Sanchez v. City of Philadelphia*, 302 Pa.Super. 184, 448 A.2d 588 (1982), and *Marzella v. King*, 256 Pa.Super. 179, 389 A.2d 659 (1978), which are procedurally identical to the

7. Pursuant to Pa.R.C.P. No. 1033, a party may amend a pleading "either by filed consent of the adverse party or by leave of court." It is clear from the record that Nationwide did not consent to allow an amended complaint. Nor does the record suggest that leave of the trial court was obtained before the complaint was amended. Nevertheless, inasmuch as the trial court granted the relief requested in the amended complaint, we shall view the amendment to the complaint as having been made with the trial court's permission.

8. Nationwide petitioned the court in writing for leave to amend its answer, and by order of court, permission to amend was granted. Thus, Nationwide complied with the requisites of Pa.R.C.P. No. 1033.

case sub judice. In *Boarts, Sanchez, Marzella,* and the present case, suit was begun by the filing of a praecipe for a writ of summons only days before the expiration of the respective statutes of limitations governing the cases. In each case, a complaint was filed several months after the filing of the summons praecipe, and an amendment to the complaint was later attempted.

In accordance with Pa.R.C.P. No. 1007(1), an action may be duly commenced by filing with the prothonotary a praecipe for a writ of summons. *Robinson v. Trenton Dressed Poultry Co.,* 344 Pa.Super. 545, 496 A.2d 1240 (1985). The filing of the praecipe tolls the statute of limitations where the filing party does not prevent service of the writ upon the adverse party. *Robinson; Wible v. Apanowicz,* 306 Pa.Super. 262, 452 A.2d 545 (1982); *see Sanchez; Note* following Pa.R.C.P. No. 1010 (recodified as Pa.R.C.P. No. 401(b) effective January 1, 1986). Therefore, in the instant case, as in *Boarts, Sanchez,* and *Marzella,* the praecipe for a writ of summons tolled the applicable statute of limitations so that the complaint was timely filed with regard to the causes of action raised therein. That is, the cause of action presented in appellees' original complaint were not barred by the statute of limitations. *See Boarts; Sanchez; Marzella.*

We now consider whether the statute of limitations barred the amendment to Keirsten's complaint. The amendment requested survivor's loss benefits for which claim the statute of limitations expired one year after Gail's death. 40 P.S. § 1009.106(c)(2). As we explained in *Sanchez,* "[t]he general rule is that an amendment will not be permitted after the running of the statute of limitations if it introduces a new cause of action, . . . . but if the amendment would only amplify or enlarge the existing cause of action, it will be permitted." *Id.* 302 Pa.Super. at 185, 448 A.2d at 589; *Kuisis v. Baldwin-Lima-Hamilton Corp.,* 457 Pa. 321, 319 A.2d 914 (1974); *Walder v. Lobel,* 339 Pa.Super. 203, 488 A.2d 622 (1985); *Asper v. Haffley,* 312 Pa.Super. 424, 458 A.2d 1364 (1983); *John Goffredo and Sons, Inc. v.*

*S.M.G. Corp.*, 300 Pa.Super. 112, 446 A.2d 255 (1982), *reargument denied,* June 21, 1982.

Thus, to determine whether the amendment was barred by the one-year statute of limitations, we must determine whether or not it raised a cause of action not contained in Keirsten's original complaint. The original complaint averred *against Nationwide* causes of action for uninsured motorist benefits, replacement services loss caused by Gerald's injuries[9] and allowable medical expenses for Gerald's personal injuries. The amended complaint presented a cause of action *against Nationwide* for survivor's loss benefits related to Gail's death.[10]

The phrase "cause of action" defies succinct definition. *Kuisis; Sanchez.* It

> is not susceptible of any single definition to be applied in all types of cases.... At times and in certain contexts, it is identified with the infringement of a right or the violation of a duty. At other times and in other contexts, it is a concept of the law of remedies.... Another aspect reveals it as ... the group of operative facts out of which a grievance has developed.

**9.** Under 40 P.S. § 1009.103, " '[r]eplacement services loss' means expenses reasonably incurred in obtaining ordinary and necessary services in lieu of those the victim would have performed, not for income, but for the benefit of himself or his family, if he had not been injured." Replacement services loss covers expenses incurred while the victim lives but remains incapacitated by the automobile accident injuries. *Habecker v. Nationwide Insurance Co.*, 299 Pa.Super. 463, 445 A.2d 1222 (1982); *Brandon v. Erie Insurance Exchange*, 264 Pa.Super. 258, 399 A.2d 765 (1978).

**10.** Under 40 P.S. § 1009.103, survivors of a deceased victim may receive survivor's loss benefits which include reimbursement for "expenses reasonably incurred by a survivor ... after a victim's death resulting from injury, in obtaining ordinary and necessary services in lieu of those which the victim would have performed, not for income, but for [the survivor's] benefit, if he had not sustained the fatal injury." This aspect of survivor's loss is identical to replacement services loss except that survivor's loss applies to the period after the victim's death whereas replacement services loss is restricted to the period before the victim's death. *Habecker v. Nationwide Insurance Co.*, 299 Pa.Super. 463, 445 A.2d 1222 (1982); *Brandon v. Erie Insurance Exchange*, 264 Pa.Super. 258, 399 A.2d 765 (1978).

*Emert v. Larami Corp.*, 414 Pa. 396, 400 n. 4, 200 A.2d 901, 903 n. 4 (1964). In the context of amended pleadings, an amendment has generally been deemed to have stated a new cause of action if the amendment rests on a different theory, basis for recovery, or relationship between the parties than did the original pleading. *Walder; John Goffredo and Sons, Inc.*

We conclude that Keirsten's amended complaint raised a new cause of action against Nationwide. The request in the amended complaint for survivor's loss benefits resulting from Gail's death was premised on a distinct theory, necessitated different proof, and sought another type of recovery than the claims against Nationwide in the original complaint for replacement services loss produced by Gerald's injuries and for Gerald's allowable medical expenses.

Since Keirsten's amended complaint asserted a new cause of action against Nationwide for survivor's loss after the one-year statute of limitations for making that claim had run and since Nationwide properly pled the statute of limitations as a bar to Keirsten's survivor's loss claim, *Dash* (statute of limitations is a waivable defense which must be pled as an affirmative defense under New Matter), the trial court erred in granting Keirsten survivor's loss benefits due to Gail's death. Accordingly, we reverse that portion of the judgment which awarded Keirsten survivor's loss benefits and interest thereon.

It is interesting to note that if Keirsten had commenced the action by a complaint and not by a writ of summons, we would not permit her to add a fresh cause of action after the statute of limitations had run. The principle is not changed because the action was commenced by a writ of summons. To change it would permit a complainant to circumvent a principle of law which serves the efficient and fair operation of the judicial system.

Next, Nationwide argues that it should not have been ordered to pay appellees' attorney's fees. *See* 40 P.S. § 1009.107(1). Nationwide was ordered to pay $3,700 in attorney's fees based on its refusal to pay the No-fault

claims of Gerald and Keirsten. Attorney's fees are assessed against an insurer when the insurer has, without a reasonable foundation for doing so, denied payment of a claim or of any significant part of a claim made pursuant to the No-fault Act. 40 P.S. § 1009.107(3); *Steppling v. Pennsylvania Manufacturers' Association Insurance Co.,* 328 Pa.Super. 419, 477 A.2d 515 (1984); *Solomon v. Sentry Insurance Co.,* 324 Pa.Super. 329, 471 A.2d 863 (1984); *Hall v. Midland Insurance Co.,* 320 Pa.Super. 281, 467 A.2d 324 (1983).

We conclude that Nationwide had a reasonable foundation for refusing to pay Keirsten's claim. As we conclude that Keirsten's claim was properly refused by Nationwide, we must conclude that its refusal to pay this claim had a reasonable foundation. Nationwide, however, did not have a reasonable foundation for refusing to pay Gerald's claim. Nationwide maintains that the lack of precedent as to which insurer under these facts was the obligor entitled it to refuse payment to Gerald. Nationwide overlooks, though, that absence of precedent does not invariably excuse an insurance carrier from denying a claim. *Steppling.* We conclude, as did the trial court, that the award of attorney's fees was well within the statutory scheme outlined in Section 204 of the No-fault Act.

The trial court, although it did not assess attorney's fees against the claims which it rejected, did assess a lump sum attorney's fees award of $3,700 as to the No-fault claims of Gerald and Keirsten. Since we cannot determine from the record what portion of the attorney's fees is attributable to Gerald's claim and what portion is attributable to Keirsten's, we must vacate the award of attorney's fees and remand to permit the trial court to make this apportionment and limit the award of attorney's fees to Gerald's claim.

Next, Nationwide asserts that section 501 of the No-fault Act permits Nationwide to set off the no-fault benefits payable to Gerald and Gail's estate [11] against the uninsured motorist benefits payable to Gail's estate. The trial court

**11.** Nationwide further asserts that it should be able to set off the No-fault Act benefits payable to Keirsten (survivor's loss) against the

ordered Nationwide to pay the awarded no-fault benefits without a setoff. We affirm in part and reverse in part.

■ Section 501 of the No-fault Act states in pertinent part that

> [t]he obligor obligated to pay basic loss benefits ... to a person occupying a motor vehicle, the owner of which is uninsured pursuant to this act or to the spouse or relative resident in the household of the owner or registrant of such motor vehicle, shall be entitled to recover all the benefits paid and appropriate loss or adjustments costs incurred from the owner or registrant of such motor vehicle or from his estate.

The rationale underlying section 501 is that an insurance company's ability to recover from an uninsured car owner will ensure that the uninsured owner ultimately bears the risk of loss and does not profit from disregarding the mandatory insurance requirements of the No-fault Act. *Harleysville Mutual Insurance Co. v. Schuck*, 302 Pa.Super. 534, 449 A.2d 45 (1982).[12]

Resolution of this setoff/reimbursement issue is governed by our decisions in *Schuck* and *Ostronic v. Insurance Company of North America*, 314 Pa.Super. 146, 460 A.2d 808 (1983).

In *Schuck*, we held that an insurer initially has to pay basic loss benefits to a *living* uninsured car owner injured

uninsured motorist benefits payable to Gail's estate. But this argument has been rendered moot by our holding that Keirsten is not entitled to survivor's loss benefits because the claim for such benefits was not made within the applicable statute of limitations period.

12. We reject appellees' contention that Gail was not an uninsured car owner for purposes of the No-fault Act because the trial court interpreted section 204 of the No-fault Act to bring Gail within the accident victim coverage provided by Gerald's insurance policy with Nationwide. In fact, Gail was an uninsured car owner because Gail failed to comply with the mandate of section 104 of the No-fault Act that the owner of a car registered in Pennsylvania continuously provide security for the car. *See Aagesen v. Travelers Companies*, 346 Pa.Super. 45, 498 A.2d 1363 (1985); *Johnson v. Travelers Insurance Co.*, 343 Pa.Super. 938, 495 A.2d 938 (1985); *Ostronic v. Insurance Company of North America*, 314 Pa.Super. 146, 460 A.2d 808 (1983); 40 P.S. § 1009.301; 40 P.S. § 1009.601.

in an automobile accident and thereafter has to bring an action against the uninsured owner for recovery of the benefits paid. We reasoned that an initial payment of benefits to a living victim is consistent with the legislature's expressed intent that the No-fault Act provide the victim with "prompt and comprehensive professional treatment," 40 P.S. § 1009.102(a)(9)(A), so that the victim can be "rehabilitated and returned as a productive member of society as quickly as possible." *Schuck*, 302 Pa.Super. at 538, 449 A.2d at 47; 40 P.S. § 1009.102.

However in *Ostronic*, we stated that an insurance obligor does not have to make an initial payment of no-fault benefits to the estate of a *deceased* uninsured car owner and try afterward to recoup payment from the decedent's estate. Whereas the initial payment of benefits to a living uninsured car owner/victim is justified because it promotes the No-fault Act's purpose of expediting the victim's treatment and rehabilitation, *Schuck*, similar justification for an initial payment of benefits to the estate of the deceased uninsured car owner/victim does not exist. *Ostronic*. Moreover, an initial payment of benefits to the estate of a deceased uninsured car owner may result in unjust enrichment for the estate and unrecoverable losses for the insurer:

> One obvious problem would be the practical ability of the insurer to obtain full reimbursement from the estate of an uninsured.... when there are other claims against that estate by other creditors and the size of the estate, including any No-fault benefits received, is exceeded in amount by the various claims.... [T]he benefits of insurance protection might be available to supplement one's estate, without a countervailing obligation to pay insurance premiums.... Only the responsible drivers who purchased insurance would suffer in such circumstances.... This result could never have been intended by our legislators....

*Ostronic*, 314 Pa.Super. at 154, 460 A.2d at 813.

Given our analyses in *Ostronic* and *Schuck*, we conclude that Nationwide is not obligated to pay no-fault

benefits (here, funeral expenses) to Gail's estate but must pay no-fault benefits (here, medical expenses) awarded by the trial court to Gerald. After Nationwide has duly paid Gerald's benefits, Nationwide may bring an action against Gail's estate to recover the amount of the no-fault benefits paid to Gerald.

Finally, Nationwide argues on appeal that Gail's estate is not eligible for benefits under the Uninsured Motorist Act because Gail's fatality was not caused by an "uninsured motor vehicle" as that expression is defined in conjunction with the Uninsured Motorist Act.

The Uninsured Motorist Act provides insurance coverage "for the protection of persons ... who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death...." 40 P.S. § 2000(a). This language in the Uninsured Motorist Act has been construed by our court "to mean that if either the owner or operator of the offending vehicle has insurance applicable to the accident, then the vehicle may not be deemed uninsured." *Parsons v. State Farm Mutual Automobile Insurance Co.*, 335 Pa.Super. 394, 398, 484 A.2d 192, 194 (1984) (footnote omitted).

The present case involves a single-car accident. At the time of the accident, the car in question was owned by Gail and was being driven by Gerald who had a motor vehicle insurance policy with Nationwide. Thus, Gail was fatally injured as the passenger of an automobile which was being operated by an insured driver, Gerald. Inasmuch as the operator (Gerald) of the offending vehicle (Gail's Toyota) had insurance applicable to the accident, Gail's death did not result from an uninsured motorist incident.[13] *Parsons.*

13. If neither Gail as the owner of the Toyota car nor Gerald as the driver of the Toyota car at the time of the subject accident had obtained a motor vehicle insurance policy applicable to the accident, Gail would nevertheless remain ineligible for uninsured motorist benefits. There is no rationale for requiring an assigned claims plan insurer to pay uninsured motorist benefits to a car owner who has chosen to allow his or her car to be operated without the requisite

Accordingly, we reverse the trial court's judgment awarding uninsured motorist benefits to Gail's estate.[14]

In summation, we quash appellant Nationwide's appeal as to the issue involving the grant of summary judgments in favor of INA. We reverse that portion of the trial court's judgment which awarded Keirsten survivor's loss benefits and interest thereon. We vacate the trial court's judgment insofar as it assessed attorney's fees against Nationwide and remand for a proper assessment of attorney's fees as they relate to Gerald's claim. We affirm that part of the trial court's judgment which directed Nationwide to pay no-fault benefits (medical expenses) and interest thereon to Gerald. We reverse that portion of the trial court's judgment which directed Nationwide to pay no-fault benefits (funeral expenses) and interest thereon to Gail's estate. We reverse that part of the trial court's judgment ordering Nationwide to pay uninsured motorist benefits and interest thereon to Gail's estate.

Appeal quashed in part. Judgment affirmed in part, reversed in part, and vacated in part. Case remanded for a proper assessment of attorney's fees. Jurisdiction is not retained.

insurance coverage mandated by the No-fault and uninsured motorist acts. *Johnson v. Travelers Insurance Co.*, 343 Pa.Super. 560, 495 A.2d 938 (1985).

**14.** We reject appellees' contention that we, as an appellate court, may regard the trial court's award of $15,000 in *uninsured motorist benefits* to Gail's estate as a grant of $15,000 in *work loss benefits* to Gail's estate and so may uphold the $15,000 judgment for Gail's estate. First, we do not know of any precedent which would allow us to disregard the clearly expressed intent of the trial court to grant uninsured motorist benefits rather than no-fault work loss benefits to Gail's estate. More importantly, we note that appellees failed to raise this issue before the trial court and so the issue has not been properly preserved for appellate review. Pa.R.A.P. 302; *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).