548 A.2d 714

Marion Schaeffer, Appellant *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellee.

462

*Lawrence Sager, Sager & Sager Associates,* for appellant.

No appearance for appellee.

OPINION BY JUDGE SMITH, October 18, 1988:

Appellant, Marion Schaeffer, appeals from an order of the Court of Common Pleas of Montgomery County affirming the suspension of her operating privileges by the Department of Transportation (DOT) pursuant to Section 1742 of the Vehicle Code (Code).[1] The suspen-

---

[1] 75 Pa. C. S. §1742 *repealed by* the Act of February 12, 1984, P.L. 26, effective October 1, 1984 provided that: "The department, upon receipt of a certified copy of a judgment, shall suspend the operating privilege of each driver and registration of each owner against whom the judgment was rendered except as otherwise pro-

sion resulted from Appellant's failure to repay to Travelers Insurance Company (Travelers) sums paid for basic loss benefits as required by Section 501 of the Pennsylvania No-Fault Motor Vehicle Act (Act).[2] The trial court is reversed.

After hearing on Appellant's appeal of the license suspension, the trial court found that David Schaeffer, Appellant's son, was involved in an accident on November 18, 1983 in an uninsured vehicle registered to Appellant. The trial court further found that on February 6, 1984, David Schaeffer applied to the Pennsylvania Assigned Claims Plan (PACP) under the Act, 40 Pa. C. S. §1009.108, for basic loss benefits; that Travelers, designated by PACP as obligor to pay the basic loss benefits, reimbursed David Schaeffer $22,271.82; that Travelers sought repayment from Appellant as owner of the uninsured vehicle; and that Appellant failed to respond to Travelers' request for repayment. Consequently, DOT suspended Appellant's license. The trial court affirmed the suspension and Appellant appealed to this Court.[3]

---

vided in this section and in section 1745 (relating to installment payment of judgments)." Substantially similar language is now found at 75 Pa. C. S. §1772.

[2] Act of July 19, 1974, P.L. 489, *as amended, formerly* 40 P.S. §1009.501, *repealed by* the Act of February 12, 1984, P.L. 26, provides as follows: "The obligor obligated to pay basic loss benefits for accidental bodily injury to a person occupying a motor vehicle, the owner of which is uninsured pursuant to this act or to the spouse or relative resident in the household of the owner or registrant of such motor vehicle, shall be entitled to recover all the benefits paid and appropriate loss or adjustments costs incurred from the owner or registrant of such motor vehicle or from his estate. The failure of the person to make payments within 30 days shall be grounds for suspension or revocation of his motor vehicle registration and operator's license.

[3] This Court's scope of review in a driver's license suspension case is limited to determining whether the findings of the trial

Appellant argues initially that DOT failed to prove the necessary elements of Section 501 during trial to sustain the license suspension. Appellant objected to the admissibility of DOT's evidence as hearsay which the trial court overruled. DOT's case was presented solely by certified documentary evidence consisting of a letter dated November 4, 1985 from Travelers to Appellant demanding repayment of benefits paid by Travelers; application for benefits filed by David Schaeffer; letter dated July 15, 1986 from Travelers to DOT requesting suspension of Appellant's license; and DOT's license suspension notice to Appellant dated July 9, 1987. Commonwealth Exhibit C-1. Appellant did not present testimony, choosing instead to stipulate through counsel that if Appellant testified, she would state that David Schaeffer drove the subject vehicle without Appellant's consent; that she had not been sued by Travelers; and that no judgment existed in favor of Travelers for the sum paid. N.T., pp. 7-8.

Appellant contends that the documentary evidence offered by DOT was hearsay and therefore inadmissible to establish any fact except what action was taken by DOT. Furthermore, since the records were not admissible under the business records exception to the hearsay rule, the trial court erred in relying upon the documents to find that DOT sustained its burden. Under principles established by this Court in license suspension cases, however, DOT may prove its case by submission of certified records necessary to justify the suspension. *See Department of Transportation, Bureau of Traffic Safety v. Mull,* 61 Pa. Commonwealth Ct. 558,

court are supported by competent evidence, whether there has been an erroneous conclusion of law, or whether the trial court's decision demonstrates a manifest abuse of discretion. *Wheatley v. Department of Transportation,* 104 Pa. Commonwealth Ct. 171, 521 A.2d 507 (1987).

434 A.2d 871 (1981); Section 6103 of the Judicial Code, 42 Pa. C. S. §6103. Moreover, Section 6104, 42 Pa. C. S. §6104, provides that records authenticated pursuant to Section 6103 shall be admissible as evidence of the existence or non-existence of facts recorded unless the circumstances indicate a lack of trustworthiness. The trial court properly concluded that the certified records offered by DOT satisfied requirements of Section 501.

Next, Appellant argues that Section 501 of the Act is inapplicable here because an unauthorized driver of an uninsured vehicle was involved in the accident and further that DOT and the trial court lacked authority and jurisdiction to suspend Appellant's license since the Act was repealed.[4] The trial court concluded that since DOT proved all elements of Section 501, Appellant's license suspension under Section 1742 of the Code was proper in that the purpose of Section 501 is to impose liability regardless of fault. Moreover, Section 501 by its terms is a risk of loss section which imposes absolute liability upon Appellant for repayment of basic loss benefits paid by Travelers. The trial court further stated that the only relevant conduct was Appellant's failure to insure her vehicle and to repay Travelers as the intent of the statute is to penalize motorists who are uninsured. *Commonwealth v. Robnett*, 30 Pa. D. & C. 3d 211 (1983). Section 501 therefore dictates that an uninsured owner shall ultimately bear the risk of loss in an uninsured motorist claim, as liability is absolute. *Harleysville Mutual Insurance Company v. Schuck*, 302 Pa. Superior Ct. 534, 449 A.2d 45 (1982).

---

[4] Appellant is in error when she argues that neither DOT nor the trial court possessed authority to suspend her license since the Act was repealed prior to that date. The Superior Court has acknowledged that the law in effect at the time a cause arose governs the action. *See Littlejohn v. Keystone Insurance Co.*, 353 Pa. Superior Ct. 63, 509 A.2d 334 (1986); *Vogel v. National Grange Mutual Insurance Co.*, 332 Pa. Superior Ct. 384, 481 A.2d 668 (1984).

The trial court however committed an error of law in concluding that Appellant's license suspension was proper where no judgment has been obtained against Appellant prior to suspension. The trial court questioned the propriety of DOT's suspension in the following excerpts from colloquy between the court and counsel for DOT:

THE COURT: Suppose he [David Schaeffer] took the car without permission or hot wired it. Would he have been able to recover from Travelers or anybody else at that point?

MR. OLIN: Every car is supposed to have insurance. What this law provides is a remedy to the insurance company that didn't get any premium from the owner or register of the car.

THE COURT: That car could have been sitting in her driveway not having been driven for six months to a year. They could have jumped in the car and taken it. Theoretically, that is a possibility.

. . . .

MR. OLIN: The statute as it is interpreted—as Travelers interprets it is in line with the Harleysville Case. They have to pay out as long as the person is an occupant. If the person is a pedestrian, there is a defense but the law has been interpreted—

THE COURT: Even if the person is an occupant that stole the car—

MR. OLIN: Absolute liability.

THE COURT: That is the dumbest thing I've ever heard. I think that is a ludicrous interpretation by any insurance company.

. . . .

If you had gone in front of a jury, I would seriously doubt that the jury would come back

with much sympathy for a person who is the thief of an automobile.

MR. OLIN: I don't think if you look at the Harleysville Case the issue would have gotten to the jury. I think it would have been a Summary Judgment and the insurance company would have had to pay.

With regard to the other argument that we are holding the license hostage, there is a precedent for that. If there is a judgment and it is not paid, they can hold the license hostage.

THE COURT: That is after a judgment. I am not concerned with the concept of holding a license hostage.

What bothers me is, apparently, you could do it without having a hearing on the merits.

N.T., pp. 12-14. Obviously, the trial judge, as did DOT's counsel, acknowledged during hearing the necessity for obtaining judgment against Appellant prior to suspension of her license. Nonetheless, the trial judge subsequently upheld the suspension despite finding that a fundamental element of Section 1742 was not satisfied. *See Harleysville Mutual Insurance Company; Recovery Services International v. Carr*, 33 D. & C. 3d 326 (1984); *Commonwealth v. Robnett; and Kottler v. Rick*, 12 Pa. D. & C. 3d 316 (1979), where suit was commenced under Section 501 to obtain judgment and recovery of basic loss benefits paid by an insurance carrier under the assigned claims provisions of the Act. Thus, this Court concludes that DOT may suspend Appellant's license only upon receipt of a certified copy of a judgment and not, as in this instance, upon receipt of a copy of Travelers' letter to Appellant simply demanding repayment of basic loss benefits paid by Travelers.

Accordingly, for reasons discussed in this opinion, the trial court's decision is reversed.

### ORDER

AND NOW, this 18th day of October, 1988, the decision of the Court of Common Pleas of Montgomery County is hereby reversed.

This decision was reached prior to the resignation of Judge MACPHAIL.