**Kubitsky Estate**

*Peter J. Verderame,* for guardian.
*Emil L. Iannelli,* for accountant.

SOKOLOVE, J., January 24, 1991 — Upon petition of the guardian of the estates of Crystal Rose Kubitsky and Laura Maureen Kubitsky, minor children of the decedent Steven J. Kubitsky, we held a hearing and directed Stephen J. Kubitsky and Bessie W. Kubitsky, co-administrators of the decedent's estate, to file an account of their administration. The co-administrators did file an account, which did not comply with our forms. They then filed an amended account, stated in appropriate form, to which the guardian, the First National Bank and Trust Company of Newtown, filed objections. After hearing on the objections and review of memoranda of law presented by the parties, we enter the following

## FINDINGS OF FACT

(1) Steven J. Kubitsky was killed in an automobile accident on August 2, 1982.

(2) At the time of his death, the decedent was married to Mary D. Kubitsky, and the couple had two children, Crystal R. Kubitsky, born June 12, 1978 and Laura M. Kubitsky, born October 28, 1979.

(3) The decedent's wife, Mary D. Kubitsky, was also injured in the automobile accident which killed him. She died as the result of her injuries the next day, August 3, 1982.

(4) At the time of his death, the decedent, his wife and children resided with his parents, Stephen J. and Bessie W. Kubitsky, in his parents' house at 23 Bittersweet Road, Levittown, Bucks County, Penn-

sylvania. The decedent and his family had lived with his parents for the previous 14 months.

(5) The Bucks County Register of Wills granted letters of administration over the decedent's estate to his parents, Stephen J. Kubitsky and Bessie W. Kubitsky, on September 2, 1982.

(6) At the time of his death, the decedent was covered by an insurance policy issued pursuant to the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. §1009.101 et seq., which was then in effect but was repealed by legislation effective October 1, 1984. The insurer, Metropolitan Property and Liability Insurance Company, paid out basic benefits under the policy, consisting in pertinent part of a $1,500 funeral benefit, a $5,000 survivors' benefit and a $15,000 wage-loss benefit. The $5,000 survivors' benefit was paid directly to the decedent's children. The $1,500 funeral benefit was paid to the co-administrators and applied by them to the decedent's funeral bill. The $15,000 wage-loss benefit was paid by check, dated March 16, 1983, payable to "Stephen Kubitsky as administrator of the estate of Stephen John Kubitsky and Isacoff & Iannelli Attorneys at Law."

(7) The co-administrators did not open a bank account for the estate. Instead, they placed the $15,000 wage-loss benefit into their own personal savings account and paid debts and expenses they deemed to be the estate's from that fund.

(8) The co-administrators received a funeral bill from Beck-O'Neill-Strouse Funeral Directors Inc., dated October 1, 1982, which showed a beginning balance for the decedent's funeral expenses of $4,569. The bill also showed "Expenses Mary Kubitsky" — $2,432, "Haky Funeral Home" — $420, and "12 certified copies" — $24, for a total balance of $7,445. The bill showed payments of

Bessie Kubitsky in the amount of $5,016.45 on August 17, 1982 and from Fidelity Bank in the amount of $874.83 on August 31, 1982. The Fidelity Bank funds came from a joint savings account in the names of the decedent and his wife. The bill did not reflect the payment of the $1,500 insurance proceeds but showed a balance due of $1,553.72. The bill did reflect that there was no charge for the care and funeral arrangements for the unborn child of the decedent and his wife, who was stillborn after his parents' fatal automobile accident.

(9) The co-administrators paid $345 to Martin Lautz and Son Memorials for a headstone for decedent's grave, and they paid $135 to Resurrection Cemetery for a foundation for the headstone.

(10) The co-administrators incurred $1,160 in administration expenses, including $147 to the Register of Wills, $113 for advertising and $900 for attorney's fees. These expenses were fair and reasonable for this estate.

(11) The co-administrators filed an amended account of their administration, stated to February 17, 1988. The account showed principal receipts of $15,000, being solely the wage-loss benefit paid by Metropolitan. The account claimed principal disbursements of $20,950.45, consisting of the aforementioned $1,160 in administration expenses; the following funeral expenses for which the co-administrators claimed reimbursement: the aforementioned $480 for the headstone and its foundation, $5,016 for the Beck-O'Neill-Strouse funeral bill, and $85 for "food for mourners following burial services"; and the following debts of decedent: $1,000 to George W. Swift for car repair, $1,850 to the co-administrators for reimbursement for Sears, Roebuck & Co., $750 to Visa, $1,400 for rental of 19 Beechtree Road, Levittown, Pa., $7,200 for 18

months' room and board at 23 Bittersweet Road, Levittown, Pa., and $2,000 for miscellaneous loans from the co-administrators. The account, therefore, showed a negative balance for distribution of $5,950.45 or, in other words, an insolvent estate.

(12) There is no record before us of the filing any Pennsylvania inheritance tax return or the payment of inheritance tax, presumably because the co-administrators assert that the estate is insolvent.

(13) The First National Bank & Trust Company of Newtown as guardian of the estates of the decedent's surviving minor children filed objections to the amended account. The objections alleged that the wage-loss benefits were wrongfully appropriated by the estate when under the terms of the Pennsylvania No-fault Motor Vehicle Insurance Act they were payable directly to the decedent's survivors, the estate of Mary Kubitsky and the children. The objections further stated that the co-administrators had failed to account for all of the decedent's assets, that the debts for which the co-administrators claimed reimbursement were improper charges against the estate, that the funeral expenses were payable by insurance and that the attorney's fees were excessive.

(14) At hearing on the objections, Ellen Burke, Mary Kubitsky's mother, testified that the decedent's assets which were missing from the account were a component stereo and a portable stereo. She valued these items respectively at $300 and between $80 and $100.

(15) Co-administrator Bessie W. Kubitsky was the only witness for the co-administrators at the hearing. We permitted her to testify over the guardian's objections under the Pennsylvania Dead Man's Rule, 42 Pa.C.S. §5930.

(16) Mrs. Kubitsky testified that she allowed the decedent and his wife to make purchases on her Sears and Visa charge cards and then pay her back. She stated that the Sears debt arose from the purchase of a bedroom set, stereo and car battery and tires. She did not date or itemize these purchases. The Visa debt, she claimed was for a recliner chair and a seven-piece dinette set.

(17) Mrs. Kubitsky also testified that she paid $1,140 for the rental of property at 19 Beechtree Road, where decedent and his family had lived as tenants.

(18) Mrs. Kubitsky testified that she would not have sued the decedent for the debts had he lived.

(19) Mrs. Kubitsky testified that she provided two bedrooms and food for the decedent and his family for an unspecified period of time.

(20) Mrs. Kubitsky could not detail the $2,000 in miscellaneous loans to decedent, aside from the purchase of a rug at one time.

(21) Mrs. Kubitsky testified that George Swift loaned the decedent money when the decedent was about 16 or 17 years old to enable the decedent to have a car, titled in the name of co-administrator Stephen J. Kubitsky, repaired. In June 1985, Mr. Swift approached the co-administrators for repayment. They paid Mr. Swift and sought reimbursement from the estate. Mrs. Kubitsky could not specify what repairs were made to the automobile.

(22) Mrs. Kubitsky did not explain the funeral bill from Beck-O'Neill-Strouse.

## DISCUSSION

We will address the easiest issue first. The guardian of the minor children alleged that the co-administrators failed to account for all of dece-

dent's assets. Specifically, Mrs. Burke testified that she thought the decedent and his wife possessed a component stereo and a portable stereo which remained at the Kubitsky residence after their deaths. Mrs. Burke attempted to estimate the value of these stereos. We find that Mrs. Burke's description of the missing articles and opinion as to their value were too indefinite and imprecise to enable us to assign additional principal to the estate with any degree of accuracy. We must dismiss these objections for failure of the guardian to meet its burden of proof.

The most significant question before us concerns the status of the $15,000 in wage-loss benefits, the only possible asset of the estate. We must decide whether these benefits properly belonged in the estate or whether, pursuant to the Pennsylvania No-fault Motor Vehicle Act, 40 P.S. §1009.101 et seq. which was then in effect, the benefits should have been paid directly to the decedent's survivors (the estate of his wife who survived him by less than 24 hours and/or his minor children). We conclude from our research that this narrow question in its exact posture is an issue of first impression never specifically resolved by the appellate courts of our Commonwealth.

We are, however, assisted in our deliberations by several higher court cases which have analyzed the No-fault Act and the recovery of work-loss benefits by decedents' survivors and estates. A summary of these cases is useful. In *Allstate Insurance v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980), the Supreme Court held that survivors of deceased motor vehicle accident victims were entitled to recover work-loss benefits as well as survivor's benefits under the No-fault Act. In reaching this decision, the court reasoned that the legislature did

not intend to treat accident victims differently than survivors of deceased accident victims. The court emphasized that its ruling best fulfilled "the legislature's express intention to provide 'compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents' by providing 'adequate basic loss benefits [to] . . . the survivors of deceased victims.'" *Id.*, 491 Pa. at 460, 421 A.2d at 636, quoting from 40 P.S. §1009.102(a)(3) and (b). While the *Heffner* court spoke of maximizing allowable benefits to survivors, it did not draw a technical distinction between survivors as individuals and the decedent's estate. The decision actually involved two separate cases, one in which the decedent's wife individually claimed benefits as a survivor and one in which the administrator of the decedent's estate made the claim. The court granted work-loss benefits to both claimants indiscriminately.

In *Freeze v. Donegal Mutual Insurance Co.*, 504 Pa. 218, 470 A.2d 958 (1983), the Supreme Court held unequivocally that the estate of a deceased child could recover work-loss benefits under the No-fault Act. There, the decedent's father, acting as administrator of his son's estate, filed suit against the no-fault insurer for work-loss benefits. The insurer demurred on the grounds that only the statutorily defined class of "survivors," which did not include the decedent's estate, could qualify for work-loss benefits and that work-loss benefits were not available to the survivors of a child who had never worked. The trial court sustained the demurrer but granted the plaintiff father leave to amend his complaint to seek survivor's benefits and funeral expenses. The Supreme Court affirmed the Superior Court decision overruling the lower court. In doing so, the Supreme Court explicitly rejected the insurer's argument that *Allstate Insurance Co. v.*

*Heffner, supra,* restricted work-loss benefits to "survivors," a group to which the estate did not belong. The court explained:

"In *Heffner,* it was decided that the right to work-loss benefits is not terminated by the demise of a victim. We held that 'survivors' of deceased victims are entitled to these benefits under the terms of the No-fault Act. It follows then that, if work-loss benefits do not terminate upon the death of a deceased victim, absent a statutory bar those benefits are recoverable by the deceased victim's estate. This is the natural, logical and compelling extension of our holding in *Heffner.* Upon a close and careful examination of the No-fault Act, we find no language which precludes the recovery of work-loss benefits to the estate of a deceased victim." *Freeze v. Donegal Mutual Insurance Co., supra,* 504 Pa. at 222, 470 A.2d at 960.

The court considered that the No-fault Act provided for basic loss benefits for "any victim or any survivor of a deceased victim," 40 P.S. §1009.201, and made the following analysis:

"The appellant's argument, however, overlooks the very basic and fundamental fact that a person who dies as a result of injuries sustained in a motor vehicle accident is, within the meaning of the No-fault Act, a victim. That an injured victim is entitled to basic loss benefits under the act is beyond question. The fact that a 'victim' dies as a result of his injuries and becomes a 'deceased victim,' makes him no less a 'victim' entitled to benefits under the provisions of the act. A personal representative in the person of the executor or administrator of his estate stands in the shoes of the deceased victim as far as entitlement to benefits is concerned. The event of a victim's death activates the rights of statutory survivors to benefits under the act. How-

ever, the activation of survivors' rights does not diminish or erase the victim's rights even though he now be a deceased victim. If it was intended that a victim's rights to benefits be extinguished at his death, the legislature could have and would have said so directly." *Id.,* 504 Pa. at 223, 224, 470 A.2d at 961. (footnote omitted)

Thus, the Supreme Court, without establishing any sort of priorities, confirmed the implication of *Heffner* — that either the victim's estate or his survivors could recover work-loss benefits pursuant to the No-fault Act.

The Commonwealth and Superior Courts have followed the holdings of *Heffner* and *Freeze.* In *Billman v. Pennsylvania Assigned Claims Plan,* 355 Pa. Super. 524, 513 A.2d 1046 (1986), alloc. den. 527 A.2d 533, and *Patterson v. Nationwide Mutual Insurance Co.,* 358 Pa. Super. 167, 516 A.2d 1235 (1986), alloc. den. 527 A.2d 543, the Superior Court approved the payment of work-loss benefits to the decedents' survivors in circumstances where the estates did not qualify for those benefits.* The court in *Patterson* specifically refused to analogize work-loss to a common-law survival action designed to compensate a decedent's estate for the loss of earning power caused by death. The court pointed to the *Heffner* dichotomy:

"Since the *Heffner* case was consolidated on appeal with one of an administrator of a decedent's estate seeking the same benefits (*Pontius v. United States Fidelity and Guaranty Co.*), the court had the opportunity to deny the receipt of benefits to Mrs.

---

* In *Billman,* the estate could not recover basic loss benefits because it stood in the shoes of the deceased victim, who was uninsured. The statute of limitations had run on the estate's cause of action in *Patterson* but was tolled by the survivor's minority so as to allow her claim.

Heffner, in her individual capacity, while permitting an estate of the deceased victim to receive the same. It did not, and we will not debilitate the decision by doing so now." *Patterson v. Nationwide, supra,* 358 Pa. Super. at 172-3, 516 A.2d at 1238.

Finally, in the last case of note, the Commonwealth Court in *Estate of Nichols,* 97 Pa. Commw. 402, 509 A.2d 967 (1986), denied the claim of the Pennsylvania Department of Revenue for the assessment of inheritance tax on work-loss benefits paid to the parents of deceased accident victims. The parents in those matters were also the administrators of their children's estates and did not include the work-loss benefits as taxable assets on their inheritance tax returns. The Department of Revenue asserted that the personal representative of a decedent's estate was the proper party to bring suit to recover the work-loss benefit and, therefore, that the work-loss, as a chose in action of the decedent or his personal representative, was an asset of the estate subject to state inheritance tax. The court, in reviewing *Heffner* and *Freeze,* rejected the notion that the estate was the only proper party to recover work-loss benefits under the No-fault Act and found that the parents as survivors were equally entitled to the benefits.

"Since the survivors in the present cases were proper parties to receive the work-loss benefits under the no-fault insurance policies, the work-loss benefits received by them did not become assets of the estates. . ." *Estate of Nichols,* 97 Pa. Commw. at 406, 509 A.2d at 968-9.

We are left with the ambiguity created by the legislature and advanced by the appellate courts that both the decedent's estate and defined survivors are authorized recipients of work-loss benefits under the No-fault Act. Although the courts have not

before been faced with the competing claims of opposing estates and survivors, we see no reason to favor one over the other. Particularly in light of *Estate of Nichols, supra,* either the estate or the survivors may collect the benefits, and the payment to either may not be overturned or redesignated. While this creates an ad hoc, first-in-time approach, we cannot deviate from the dictate of the law. We perceive no intent by the legislature to prefer the decedent's survivors at the expense and sacrifice of the legitimate claims against the decedent's estate, or vice-versa. Thus, we are constrained to hold that the $15,000 insurance payment for the decedent's wage loss to the administrator of the estate was proper. We dismiss the guardian's objection that these funds should have been paid directly to the survivors.

Our holding in this regard does not end our inquiry and does not endorse the co-administrators' account. The funds were properly in the estate, but we must scrutinize the disbursements made therefrom.

We find the administration expenses, consisting of $900 in attorney's fees, $147 to the Register of Wills and $113 in advertising, to be appropriate, and we allow them. We approve the payments for the decedent's headstone and its foundation. We approve the estate's payment of $3,217 of the funeral bill, representing the decedent's funeral expenses as shown on the bill of $4,569 plus one-third of the fees for Haky Funeral Home and certified copies (since three bodies were involved), minus the $1,500 insurance payment. We did not deduct the payment in Fidelity Bank funds from the estate's obligation because these funds belonged to the survivor on the joint account, the decedent's wife, and should have been credited toward her expenses which were

reflected on the funeral bill. We find that the charge for food for mourners after the burial service was not sufficiently established by the evidence.

We will disallow the remaining disbursements of the estate, all of which were claimed reimbursements to the co-administrators for debts of the decedent. In seeking such reimbursement, the co-administrators have become claimants against the estate and have subjected themselves to an extremely strict standard. A claim against a decedent's estate can be established and proved only by evidence which is clear, direct, precise and convincing, and the burden of proof lies upon the claimant. *Estate of Allen,* 488 Pa. 415, 412 A.2d 833 (1980); *Dart Estate,* 426 Pa. 296, 232 A.2d 1724 (1967); *Petruzzi Estate,* 410 Pa. 554, 190 A.2d 314 (1963); *In re Estate of Cecchine,* 336 Pa. Super. 111, 485 A.2d 454 (1984). "Claims against a dead man's estate which might have been made against himself while living are always subject to just suspicion, and our books . . . are full of expressions by this court of the necessity of strict requirements of proof . . .." *Galbraith's Estate,* 270 Pa. 288, 113 Atl. 361 (1921). The co-administrators utterly failed to satisfy this burden of proof.

First, upon reflection and review of the notes of testimony from the hearing on this matter, we believe that we were mistaken in overruling the guardian's Dead Man's Rule objections and permitting Mrs. Kubitsky to testify about events occurring before the decedent's death. We were plainly in error. As a claimant and adverse party, she was incompetent to testify about matters before decedent's death pursuant to the Dead Man's Rule, 42 Pa.C.S. §5930. A surviving party is not permitted to testify as to any relevant matters occurring before

the decedent's death, even though they be independent matters or facts which in no way can be regarded as transactions with, or communications by, the decedent. *Lieber v. Eurich,* 201 Pa. Super. 186, 188, 192 A.2d 159, 160 (1963), cited in *In re Estate of Cecchine, supra,* 336 Pa. Super. at 117, 485 A.2d at 458. Mrs. Kubitsky's testimony did not fall within any exception to this prohibition and was certainly not saved by the egregious conflict she created as co-administrator of the estate. Since we presided over this matter without a jury, we may properly strike her testimony about the pre-death debts and refuse to consider it. Without her testimony, the record is devoid of evidence on the debts, and the co-administrators' claim for these items must fail.

Even were we to consider Mrs. Kubitsky's testimony, it was far too vague to substantiate the claims. The credit card bills were not dated or itemized, nor was any explanation given for the estate's failure to include the assets allegedly purchased with the cards. There was absolutely no evidence of any rental agreements, the rental amounts were not defined and the time periods of the rentals were not presented. We are especially skeptical of the rental claim because the parent-child relationship creates a presumption that the room and board was gratuitous. Compare *Gibb's Estate,* 266 Pa. 485, 110 Atl. 236 (1920); *Visco Estate,* 2 Pa. Fiduc. 2d 327 (Allegheny Co., 1982); *In re Rodgers Estate,* 34 Delaware L. Rep. 412 (1947). The car repair bill was too remote in time and in relationship to be recognized, even were we inclined to accept Mrs. Kubitsky's testimony in its best light. Mr. Swift's claim could not have been successfully asserted against this estate, and the co-administrators

paid it at their risk and to their detriment. The decedent was a minor at the time of the alleged transaction, the car which was repaired was not his and the claim was stale, coming well after the statute of limitations would have run.

We are left with an estate with principal receipts of $15,000 and permitted principal disbursements of $4,857, leaving a net estate of $10,143. The estate is not insolvent, and the co-administrators will be required to file a Pennsylvania inheritance tax return, if they have not already done so, and pay the tax due thereon. The estate will be liable only for the actual tax due as of nine months after death, May 2, 1983, which presumes a timely return. The co-administrators shall be personally liable for all penalties and interest assessed thereafter. We attribute their wrongful failure to file a return or pay the tax due to their deliberate mishandling of this estate and surcharge them accordingly.

We will also personally surcharge the co-administrators for interest, at the maximum legal rate of 6 percent compounded annually, which the net estate should have earned from May 2, 1983. Where the administration of an estate is delayed, it is the duty of the personal representative to invest the estate funds, and where he breaches this duty he may be charged with appropriate interest, not to exceed the legal rate. *Estate of Vaughn,* 315 Pa. Super. 354, 461 A.2d 1318 (1983). Generally, the representative of an estate is chargeable with interest where he uses estate funds for his own benefit or profit. *In re Meyer's Estate,* 173 Pa. Super. 592, 98 A.2d 444 (1953). The co-administrators never placed the funds into an estate account and blatantly misappropriated those funds. They must pay the estate for the interest it lost.

## CONCLUSIONS OF LAW

(1) The court has jurisdiction over this matter.

(2) The guardian failed to prove that the estate included additional assets which were not listed in the co-administrators' account.

(3) The $15,000 in insurance proceeds for decedent's work loss were properly paid to the estate pursuant to the No-fault Act.

(4) The administration expenses shown in the account, expenses for the headstone and foundation and $3,217 of decedent's funeral expenses were proper charges against the estate.

(5) The co-administrators failed to meet their burden of proof as claimants against the estate for the additional funeral expenses and the alleged debts of the decedent.

(6) The testimony of co-administrator Bessie W. Kubitsky concerning occurrences before the decedent's death was barred by the Dead Man's Rule but was, in any event, insufficient to prove the co-administrators' claims.

(7) The co-administrators are personally liable for any interest and penalties assessed by the Pennsylvania Department of Revenue for late filing of the inheritance tax return and/or payment of the tax.

(8) The estate is liable for any inheritance tax determined to be due had the return been filed and the tax paid on a timely basis, as of May 2, 1983.

(9) The co-administrators breached their fiduciary duty to reasonably invest the estate's funds, and they improperly used estate funds for their own benefit. As a result, they are personally liable to the estate for interest at the maximum legal rate of 6 percent, compounded annually, on the net estate as we have determined it from May 2, 1983 until the estate funds are distributed to the rightful heirs.

Accordingly, we enter the following

## DECREE NISI

And now, January 24, 1991, upon consideration of the objections of the First National Bank and Trust Company of Newtown, guardian of the estates of Crystal R. Kubitsky and Laura M. Kubitsky, minors, to the amended first and final account of Stephen J. Kubitsky and Bessie W. Kubitsky, co-administrators of the estate of Steven J. Kubitsky, it is hereby ordered and decreed that the objections concerning missing assets and the receipt by the estate of the insurance proceeds for work-loss benefits are denied and dismissed. It is further ordered and decreed that the objections concerning the claims of the co-administrators against the estate are granted in part. The administration expenses in the amount of $1,160 are approved and allowed. Funeral expenses are allowed only in the amount of $3,217 for the funeral bill and in the amount of $480 for the headstone and foundation. The remaining claims of the co-administrators are denied. The estate shall be liable for any Pennsylvania inheritance tax determined to be due as of May 2, 1983, but the co-administrators shall be personally liable, jointly and severally, for any and all interest and penalties assessed thereon from that date. The co-administrators are surcharged for interest on the net estate (the amount remaining after the deduction from the $15,000 in principal receipts of the credits allowed above and the basic inheritance tax) from May 2, 1983 at the rate of 6 percent compounded annually until distribution to the heirs. The co-administrators are jointly and severally liable for the payment of this interest to the estate. If no objections are filed to this decree nisi within 10 days of the date hereof, the clerk shall enter this decree nisi as the final decree of the court.